UNITED STATES of America,
Plaintiff–Appellee,

v.

Jesus Antonio RIVERA,
Defendant–Appellant.

No. 87–2479.

United States Court of Appeals,
Tenth Circuit.

Feb. 9, 1989.

Kenneth J. Wadas, Nicholas A. De John & Associates, Ltd., Chicago, Ill., for defendant-appellant.

Paula Burnett (William Lutz, U.S. Atty., and James D. Tierney, Asst. U.S. Atty., on

the brief), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN and SEYMOUR, Circuit Judges, and A. ANDERSON *, Senior District Judge.

ALDON J. ANDERSON, Senior District Judge.

Defendant Jesus Antonio Rivera and a codefendant, Monica Jones, were indicted by the United States Grand Jury for possession of more than 500 grams of cocaine with intent to distribute. *See* 21 U.S.C. § 841(a)(1) (1982), 21 U.S.C. § 841(b)(1)(B) (1982 & Supp. IV 1986), 18 U.S.C. § 2 (1982 & Supp. IV 1986). Both defendants filed pretrial motions to suppress. As part of the pretrial proceedings, the district court conducted an evidentiary hearing and ordered a partial granting and a partial denial of that motion. Mr. Rivera subsequently pled guilty and was sentenced, while the charge against Ms. Jones was dismissed. Mr. Rivera now appeals from the final judgment of his conviction, claiming that his conviction should be reversed.

## I. BACKGROUND

According to the findings of the district court, a truck driver used his CB radio to notify Richard Keene, a New Mexico State Police Officer, that his Reeves truck was being "tail-gated" by a light-blue two-door car. Officer Keene waited and subsequently noticed a Reeves truck with a light-blue car immediately behind. After following the car for some time, Officer Keene "pulled it over." The vehicle's occupants, Mr. Rivera and Ms. Jones, gave Officer Keene conflicting and inconsistent information regarding their travel plans and their relationship. Mr. Rivera was unable to produce ownership papers to the car.

Furthermore, Officer Keene testified that, while issuing a traffic citation for following too closely, he detected "a strong odor of car freshener." Record, vol. 2 at 20. He reportedly observed that Mr. Riv-

era avoided eye-to-eye contact, was breathing heavily, began sweating and turned red in the face. Officer Keene testified that, upon asking permission to search the vehicle, Mr. Rivera responded, "You can look anywhere in my car." *Id.* at 21. When the car trunk was searched, a sweet, chemical ether smell was noted, which Officer Keene had learned to associate with the possible presence of cocaine. Inspection of the car interior revealed several car deodorizers. "The right rear bench seat was ajar" and could not be depressed. *Id.* at 28. Further search uncovered three packages underneath the seat, one of which was spilling a white, powdery substance, later testing positive for cocaine. Upon finding the three packages, Officer Keene placed Mr. Rivera and Ms. Jones under arrest. Next, after receiving Mr. Rivera's written consent, the car was removed from bad weather into the hanger of a nearby gas station to continue the search. The vehicle was dismantled, revealing a storage compartment in the body of the car.

At the suppression hearing, the district court found that Officer Keene had probable cause to first stop the vehicle and to then conduct the highway search incident to defendants' arrest. Additionally, the district court found that Officer Keene asked Mr. Rivera for permission to search the vehicle and that consent was given. However, the district court found that neither this consent nor the subsequent signed consent gave officers permission to dismantle the car; a search warrant should have been obtained before conducting the gas station search and, therefore, any evidence from this portion of the search was suppressed.

Mr. Rivera argues to this court that Officer Keene stopped the vehicle as a pretext and did not have probable cause for either the stop or the highway search. Additionally, defendant claims that the search was not valid since it failed to meet legal standards for a search incident to an arrest. In reviewing these claims, the rulings of the

* The Honorable Aldon J. Anderson, Senior District Judge of the District of Utah, sitting by designation.

District Court must be upheld unless they are clearly erroneous. *United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.) ("The standard of review for denial of a motion to suppress is ... [the] clearly erroneous [standard]"), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir.1984) ("At a hearing on a motion to suppress, ... [t]he appellate court is bound by the trial court's determinations unless they are clearly erroneous").

## II. ANALYSIS

All governing factors must be considered in determining whether detention of a suspect and consent to search a vehicle is reasonable and can be upheld against Fourth Amendment safeguards. "[I]n determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Guzman*, 864 F.2d 1512, 1518-19, (10th Cir. 1989), citing *Terry v. Ohio*, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1878-79, 20 L.Ed.2d 889 (1968).

■ When police lack the reasonable suspicion necessary to support a stop, but use a minor violation to support a stop in order to search a person or place for evidence of an unrelated serious crime, the stop is merely pretextual. In determining whether such a stop is constitutional, the court should ask "not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." *Guzman*, 864 F.2d at 1515 & 1517, citing *United States v. Smith*, 799 F.2d 704 (11th Cir.1986). In other words, an objective analysis of the facts and circumstances of a pretextual stop is appropriate, rather than an inquiry into the officer's subjective intent. *Guzman*, 864 F.2d at 1515 & 1518.

■ Of course, even if the initial stop and investigation are valid, the officer's action may at some point become unreasonable and comprise an unlawful detention. *E.g., United States v. Recalde*, 761 F.2d 1448 (10th Cir.1985). No bright line divides the point at which an investigatory stop becomes an unlawful detention. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). Searches and seizures are upheld when "the police officer [can] point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1879–80. A police officer's conduct during a stop is evaluated according to whether the duration of the stop was reasonable, whether the detained person had the ability to leave or end the encounter, and whether the detained person was transported during the period of detention. *Florida v. Royer*, 460 U.S. 491, 504-06, 103 S.Ct. 1319, 1328–29, 75 L.Ed.2d 229 (1983).

### A. Initial Investigatory Stop

■ Before initiating the stop at issue here, Officer Keene was notified by a third party that Mr. Rivera was "tailgating" and Officer Keene then observed the illegal driving conduct. These facts provided an objective basis for the district court's finding that the stop was based upon probable cause and not upon pretext. We do not agree with Mr. Rivera that a necessary inference of pretext can be drawn from the presence of working arrangements between the Federal Drug Enforcement Agency and the New Mexico State Police nor from evidence that Officer Keene made similar stops and seizures on other occasions. Officer Keene could legitimately ask questions relating to the identity and travel plans of Mr. Rivera and Ms. Jones and the ownership of the car Mr. Rivera was driving, regardless of Officer Keene's underlying motivation.

■ In *Guzman*, we explained that "[i]f police officers in New Mexico ... routinely stop most cars they see in which the driver is not wearing his seat belt, then this stop was not unconstitutionally pretextual at its inception, even if [the officer] subjectively

hoped to discover contraband during the stop." 864 F.2d at 1518. Since police officers routinely stop cars that are tailgating, the stop in this case was not unconstitutional, even if Officer Keene suspected that Mr. Rivera was transporting drugs. "[T]he legality of his actions [was] not affected by his subjective beliefs," *Sirimarco v. United States*, 315 F.2d 699, 702 (10th Cir.), *cert. denied*, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963), but was justified through the presence of probable cause. Thus, Officer Keene lawfully stopped Mr. Rivera's vehicle and conducted an initial investigation while issuing a traffic citation.

### B. Highway Search

Officer Keene's further detention of Mr. Rivera and Ms. Jones was supported by reasonable suspicions following their conflicting and inconsistent responses to his questions and to Mr. Rivera's inability to produce the car's ownership papers. *See United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.1984) (officer acted lawfully in detaining car when possessory rights could not be determined). The district court entered two separate findings regarding the highway search of the vehicle during this detention: 1) Officer Keene had probable cause to search the vehicle incident to an arrest and, 2) Mr. Rivera gave Officer Keene permission to search the vehicle. Each of these findings warrant separate analysis.

#### 1. *Search Incident to an Arrest*

■ A warrantless search of an arrested person and the immediate surrounding area may be conducted contemporaneously with the arrest. *New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). On the other hand, a search cannot precede an arrest and then serve as part of its justification. *Sibron v. New York*, 392 U.S. 40, 63, 67, 88 S.Ct. 1889, 1903, 1905, 20 L.Ed.2d 917 (1968). However, in some instances, a search occurring before a formal arrest may be valid where the arrest "followed quickly on the heels of the challenged search...." *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100

S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). For example, in one case, a detainee was compelled to empty his pockets and the contents of the objects produced were searched a few minutes prior to making a formal arrest. *United States v. Gay*, 774 F.2d 368, 371, 378 (10th Cir.1985). During an investigatory stop in another case, one officer inspected a stopped vehicle while two other officers performed a "pat-down" search of vehicle's two occupants. *United States v. Romero*, 692 F.2d 699, 701 (10th Cir.1982). The first officer announced that he detected the smell of marijuana while opening the door of the stopped vehicle and, at about the same time, another officer pulled a plastic bag of marijuana from the pocket of one detainee. *Id.*

In both *Gay* and *Romero*, this court held that the search and seizure was lawful. However, "[i]t is a question of fact precisely when, in each case, the arrest took place." *Sibron v. New York*, 392 U.S. at 67, 88 S.Ct. at 1905. That determination distinguishes the facts now before us and is dispositive to our analysis.

■ The district court found that approximately seven minutes elapsed from the time the vehicle was stopped until the first package of cocaine was discovered. "[T]he entire search of the vehicle consumed approximately fifteen minutes," record, vol. 2 at 88, and culminated in the arrest of Mr. Rivera and Ms. Jones. From these findings and the factual sequence of events, it is evident that short intervals separated the time Officer Keene first smelled the possible odor of cocaine while searching the car trunk, located the first, second and third packages of cocaine within the car's interior, and carried out the actual arrest. Thus, the search preceded the arrest and was not truly contemporaneous.

In *Gay*, grounds for arrest were present at the time defendant was first involuntarily detained and before the incriminating evidence was discovered. *United States v. Gay*, 774 F.2d at 378. This court noted that, although the defendant was not actually arrested until later, he was not free to

leave during the search and was "in effect ... already apprehended." *Id.* In *Romero,* this court observed that the search for marijuana occurred incident to an arrest only if the officer announced that he smelled marijuana prior to the search and seizure since that event, combined with other circumstances, was necessary to create probable cause for an arrest. *United States v. Romero,* 692 F.2d at 703–04. The search was validated on other grounds since it was unclear whether probable cause for arrest existed at the time of the search and seizure. *Id.* at 704. *Cf. United States v. Sharpe,* 470 U.S. at 682, 688, 105 S.Ct. at 1573, 1576 (twenty-minute detention was reasonable where police had reasonable and articulable suspicion of narcotic trafficking).

In contrast to those other cases, neither the government nor Mr. Rivera claim that he was under any form of apprehension or arrest during the highway search and, in fact, probable cause for his arrest did not exist until the search was underway. Therefore, we hold that the district court improperly found that Officer Keene had probable cause to search the vehicle incident to an arrest. In order to be lawful, the search and seizure must be upheld on other grounds.

### 2. *Voluntary Consent to Search*

It is well recognized that a search and seizure can be made even without probable cause if voluntary consent is given. *See United States v. Diaz–Albertini,* 772 F.2d 654, 658 (10th Cir.1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987). According to Officer Keene's testimony and the findings of the district court, he asked Mr. Rivera for permission to search the vehicle and Mr. Rivera gave that permission. The ensuing search soon led to the three packages of cocaine, and the arrest swiftly followed. Mr. Rivera does not deny that he gave his consent. However, he essentially claims that the district court's findings establish that this consent occurred after the search was complete.

We do not agree that the stated findings of the district court support that conclu-

sion. After finding that the initial stop and search was lawful, and that permission to search the vehicle was given, the district court discussed the written consent form and the subsequent gas station search of the vehicle. The district court stated:

> The Court therefore finds that there was probable cause for Officer Keene to stop the vehicle and search the vehicle incident to the arrest.
>
> The Court is somewhat puzzled about the form for consent to search which was obtained after the initial stop and search.
>
> While it is signed by Mr. Rivera, the Court finds that following their being arrested, that it was incumbent upon the arresting officers to get a search warrant.
>
> I do not find that—I find that this consent to search form does not give the officers permission to dismantle the car....
>
> And I do not feel that any consent to search form entitles the policemen after the people have been taken into custody and have custody of the automobile to dismantle an automobile, which is apparently what took place in this case, notwithstanding the consent to search form executed by Mr. Rivera.
>
> So the Court will suppress any evidence that was obtained from the automobile after the initial stop and search....

Record, vol. 2 at 89–90. Upon review of the record, we conclude that the district court's concern was related to the written consent form and not to the earlier verbal consent for the vehicle's search.

██ Furthermore, the district court's findings were based upon testimony just freshly received. Officer Keene related that Mr. Rivera gave verbal consent prior to the search. Mr. Rivera has not made any direct claim, then or now, that Officer Keene's testimony regarding the sequence of events was incorrect. Neither does he challenge Officer Keene's statements that he himself assisted in the search by walking to the driver's side of the car, leaning through the window and removing the car keys, and then moving to the rear of the

**1266**

vehicle and opening the trunk. These circumstances support the district court's ruling that Mr. Rivera gave voluntary consent to conduct the highway search, even though the written consent was not sufficient to justify the subsequent gas station search. *See United States v. Obregon*, 748 F.2d at 1376–77. Thus, while the highway search was not correctly characterized as a search incident to an arrest, it was lawfully performed with Mr. Rivera's consent and partial assistance.

### III. CONCLUSION

We hold that the initial stop and investigation for a traffic violation was validly made and executed. The district court was not clearly erroneous in finding that probable cause for these police actions was present. The highway search cannot be upheld as a search incident to an arrest since probable cause was not present until the search and seizure produced drug evidence. However, the highway search was lawfully performed following Mr. Rivera's voluntary verbal consent. Thus, the district court was not clearly erroneous in denying suppression of evidence from the highway search even though written consent for the subsequent gas station search was found to be invalid.

AFFIRMED.