52 F.3d 339
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Rosa TORRES-MORALES, aka Alma Rosa Alcarez, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norma Leticia VILLEGAS-ROJAS, Defendant-Appellant.
 Nos. 94-4008, 94-4014.
(D.C. No. 93-CR-251)
 United States Court of Appeals, Tenth Circuit.
 April 18, 1995.
 ORDER AND JUDGMENT[1]
 
 1
 Before HENRY and LOGAN, Circuit Judges, and BROWN, District Judge.[2]
 
 
 2
 Defendants Rosa Torres-Morales and Norma Leticia Villegas-Rojas appeal their convictions after a jury trial for possession of in excess of one hundred kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. 841(a)(1). Both defendants assert that the district court erred in denying their motions to suppress evidence seized in a search of the U-Haul truck Torres-Morales was driving. Villegas-Rojas also contends that the district court erred in denying her motion to suppress evidence found during a post-arrest search of her purse.
 
 
 3
 * Defendants were together in a vehicle driven by Torres-Morales traveling north on Interstate 15 near Nephi, Utah, when Highway Patrol Officer Doug Miller stopped them for traveling seventy-six miles per hour in a sixty-five mile zone. Miller asked Torres-Morales for her driver's license and rental agreement, and she produced a temporary California license. As she leaned over the dash, apparently to look for the rental agreement, Miller asked her what was in the truck. She indicated household items. Miller then asked her if she was moving. After an affirmative response he asked where she was moving or where she was going, and Torres-Morales said "Chicago, no no, Salt Lake." II R. 17. When he asked her which one, she said Salt Lake. Miller then asked "where," and Torres-Morales said to a friend's house. He asked her for an address or area of Salt Lake City where her friend lived. Torres-Morales did not respond other than to say "um" after a minute's pause. Id. at 18. Miller became suspicious and asked Torres-Morales if he could "look around in the back of the truck." Id. She said "sure," id., and got a key from a purse. She then unlocked the door to the back of the truck and helped Miller open it.
 
 
 4
 Inside the truck Miller said he was surprised to see no boxes, only five or six pieces of dilapidated furniture and a newer looking chest-type freezer. The freezer was locked, although he could lift the lid a quarter inch or more. Miller asked Torres-Morales if she owned the freezer and had the key to it; she replied that she owned it but did not have the key.[3] He then asked her what was in the freezer and she responded that she did not know. The officer pulled up the corner as far as he could, saw a large object wrapped in brown paper at the top of the freezer, and smelled marijuana.[4] Miller again asked her what was in the freezer, and when she replied "don't you know," Miller responded that he thought he did. Id. at 27. Torres-Morales then stated that her passenger had nothing to do with the contraband. Miller then arrested both women. Miller and another officer obtained a warrant to search the truck, and found forty packages of marijuana in the freezer. They found two more packages inside an old chair in the truck. The marijuana weighed about 415 pounds.
 
 
 5
 At trial Mike Rufener of the Utah Division of Investigations testified that after defendants were arrested he searched Villegas-Rojas' purse in which he found a small piece of paper with forty-three number symbols. He noted that forty-two packages of marijuana had been found in the truck. A fingerprint expert testified that Villegas-Rojas' fingerprints were on four of those packages.
 
 
 6
 Defendant Villegas-Rojas testified that she first met Torres-Morales in a bar in Los Angeles and then later by chance in Las Vegas when Torres-Morales offered her a ride to Chicago by way of Salt Lake City. Villegas-Rojas testified that the note with the numbers on it signified sales of different types of tamales. She could not explain why her fingerprints were on four of the marijuana packages, but insisted she never touched the packages and did not even know they existed.[5]
 
 
 7
 We review the district court's denial of a motion to suppress evidence under a clearly erroneous standard, considering the evidence in the light most favorable to the district court's ruling. United States v. Soto, 988 F.2d 1548, 1551 (10th Cir.1993). The determination of reasonableness under the Fourth Amendment, however, is a question of law we review de novo. Id.
 
 II
 
 8
 Defendants concede that the initial traffic stop was reasonable because Officer Miller obtained a radar reading of seventy-six miles per hour in a sixty-five mile zone. Defendants argue, however, that when Miller began questioning Torres-Morales while he held her license and before she had produced the rental agreement that the stop became an investigative detention requiring reasonable suspicion. The government asserts that Miller was merely engaging in "conversation" or "chit chat" and his few questions did not constitute an investigative detention.
 
 
 9
 "During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." Soto, 988 F.2d at 1554. Once a driver provides a valid driver's license and proof of the right to operate the vehicle, "the officer must allow him to continue on his way without delay for further questioning." United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990), cert. denied, 501 U.S. 1207 (1991). To detain the driver for further questioning not related to the initial stop an officer must have "an objectively reasonable articulable suspicion that illegal activity has occurred or is occurring." Soto, 988 F.2d at 1554. If an officer has completed a valid traffic stop, and retains the driver's license and registration, the driver is not free to leave, and the resulting detention must be supported by reasonable suspicion. See United States v. Walker, 933 F.2d 812, 816 (10th Cir.1991), cert. denied, 112 S.Ct. 1168 (1992). We must determine first whether Miller's questions were permissible conversation during a routine stop for a traffic violation or whether his conduct constituted an investigative detention requiring reasonable suspicion.
 
 
 10
 We have approved of officers inquiring during a routine traffic stop about a driver's destination, occupation, and relationship with a passenger, in the absence of reasonable suspicion. See, e.g., United States v. Rivera, 867 F.2d 1261, 1262-63 (10th Cir.1989) (officer "could legitimately ask questions relating to the identity and travel plans of [the defendants]," as well as their relationship); see also United States v. Turner, 928 F.2d 956 (10th Cir.) (officer asked driver's occupation), cert. denied, 112 S.Ct. 230 (1991). Miller's questions were brief and did not constitute interrogation. The district court did not err in refusing to find that the officer needed reasonable suspicion in order to ask questions about the driver's destination and what was in the truck.
 
 
 11
 Next, defendants assert that when Officer Miller asked to look in the truck, he did not have reasonable suspicion to believe a crime was being committed. Defendants point out that nervousness alone generally does not give rise to objectively reasonable suspicion. Walker, 933 F.2d at 817. But our reasonable suspicion inquiry involves the totality of the circumstances. See United States v. Sokolow, 490 U.S. 1, 8 (1989). Here, in addition to her nervousness[6] defendant Torres-Morales responded with "Chicago, no no, Salt Lake" when asked where she was moving, and did not respond when asked the address to which she was moving. This situation is similar to that in Soto, where the driver appeared nervous during a routine traffic stop and did not know the address of the uncle he claimed loaned him the car. We held that the officer had sufficient objectively reasonable suspicion of illegal activity to support further questioning. Soto, 988 F.2d at 1555. Likewise, a reasonable officer in the instant case would have believed criminal activity might be afoot. Miller's request to look in the back of the truck was reasonable under the circumstances. See Turner, 928 F.2d at 958-59; Rivera, 867 F.2d at 1262-64.
 
 
 12
 Defendants next argue that Torres-Morales' consent to search was not voluntary and therefore any evidence obtained as a result of the search must be suppressed.[7] We must accept the district court's finding that the consent was voluntary unless it was clearly erroneous. See United States v. Wright, 932 F.2d 868, 878 (10th Cir.), cert. denied, 112 S.Ct. 428 (1991). The voluntariness of consent is determined by the totality of the circumstances. United States v. Price, 925 F.2d 1268, 1271 (10th Cir.1991). The government bears the burden to show that the consent was voluntary and must prove that "there was no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." Soto, 988 F.2d at 1557. "Valid consent may be given by a person being detained." Id. (citations omitted).
 
 
 13
 Defendants point to the fact the stop occurred on an interstate highway several miles from a population center. As we noted in Soto, however, such a site is in public view. Defendants provide no other facts weighing against voluntary consent. They presented no evidence of overt coercion; Miller did not harass Torres-Morales, and he did not display or brandish a weapon. He simply asked whether he could look into the back of the truck. In response, Torres-Morales got out of the truck, unlocked the sliding door, and helped open it. See Soto, 988 F.2d at 1558 (when the officer sought permission to look into the trunk, the defendant got out of the car and opened the trunk himself). Defendants do not contend that Torres-Morales did not understand Miller's request. We must hold that the district court did not err in finding that the consent was voluntary.[8] Once Officer Miller entered the truck with her consent and smelled marijuana in the freezer, he had probable cause to arrest Torres-Morales and to search the truck. See, e.g., United States v. Nielsen, 9 F.3d 1487 (10th Cir.1993); United States v. Morin, 949 F.2d 297, 299-300 (10th Cir.1991).
 
 III
 
 14
 Defendant Villegas-Rojas argues that she was arrested without probable cause, and thus evidence obtained from the subsequent search of her purse, including the incriminating note (with figures nearly matching the number of marijuana packages found), should have been suppressed.[9] We need not reach the question whether Villegas-Rojas' presence in the truck provided probable cause to arrest her, because the admission of the evidence obtained during the search of her purse, if error, was harmless. United States v. Espinosa, 771 F.2d 1382, 1415 (10th Cir.) (if average juror would have believed that government's case was sufficient without challenged evidence, harmless error to have admitted it), cert. denied, 474 U.S. 1023 (1985). Despite her testimony about her chance meetings with Torres-Morales, the fingerprint testimony provided overwhelming evidence that Villegas-Rojas participated in the drug transportation scheme. Thus, although the note found in her purse may have added to the evidence, she would have been convicted without it.
 
 
 15
 AFFIRMED.
 
 
 16
 HENRY, Circuit Judge, dissenting.
 
 
 17
 I cannot agree that under the circumstances of this case Officer Miller's suspicion was objectively reasonable, and I would hold that the defendants were unlawfully detained. Reasonable suspicion may flow only from "specific and articulable facts and rational inferences drawn from those facts.' " United States v. Fernandez, 18 F.3d 874, 878 (10th Cir.1994) (quoting United States v. Werking, 915 F.2d 1404, 1407 (10th Cir.1990)). Unlike this court's prior cases, there were no facts in this case tending to indicate the presence of drugs or that Ms. Torres was not legally entitled to operate the vehicle in question. In my view, our cases do not support a finding of reasonable suspicion that a crime is being committed based merely on nervousness and an individual's blundering response or nonresponse to an officer's "chit chat." Although Officer Miller may have been suspicious of the defendants' actions in this case, this suspicion is no more legally significant than the officer's "sixth sense" in Fernandez that something was "afoot." See id. at 880. Because of the absence of the requisite "specific and articulable facts," I would hold that Officer Miller lacked reasonable suspicion to justify the extended detention of the defendants in this case.
 
 
 18
 I also believe that the government has failed to establish that Ms. Torres's consent was "sufficiently an act of free will to purge the primary taint" of the illegal detention. Brown v. Illinois, 422 U.S. 590, 602 (1975); see also Fernandez, 18 F.3d at 881-82. Additionally, because Ms. Villegas has standing to challenge the unlawful detention of her person, United States v. Erwin, 875 F.2d 268, 270 (10th Cir.1989), I would hold that the evidence seized in this case was the fruit of her unlawful detention, and reverse the district court's denial of both of the defendants' motions to suppress. See United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir.1995) (citing Erwin for the proposition that if the defendant's person and truck were unlawfully detained, evidence discovered during subsequent search might be excluded as fruit of the poisonous tree), petition for cert. filed, ____ U.S.L.W. ____ (U.S. March 10, 1995) (No. 94-8433); United States v. McKneely, 6 F.3d 1447, 1450 (10th Cir.1993) (citing Erwin for the proposition that when a defendant lacks standing to challenge the search of the vehicle, the evidence might still be subject to exclusion as fruit of the defendant's unlawful detention); United States v. King, 990 F.2d 1552, 1563-64 (10th Cir.1993) (upholding district court's orders suppressing evidence in both the trial of the passenger and of the driver, because the evidence--which was discarded from the passenger's person while outside the vehicle--was fruit of the both defendants' unlawful detentions); United States v. Arango, 912 F.2d 441, 446 (10th Cir.1990) (explaining that although a defendant who has no reasonable expectation of privacy in the vehicle "cannot challenge the search of the truck, he can, of course, challenge his own seizure," and if his seizure was illegal, "evidence obtained as a result ... must be excluded as fruit of the poisonous tree"), cert. denied, 499 U.S. 924 (1991).
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Wesley E. Brown, Senior United States District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [3]
 She later said she had lost the key. II R. 27. After the arrest officers found the key in Torres-Morales' purse. III R. 26
 
 
 [4]
 Miller then asked Torres-Morales to sign a consent form so he could look further. Miller had Torres-Morales read the form, fill it out and sign it. Miller and another county deputy dispatched to the location witnessed her signature. The consent form is not pertinent to our analysis
 
 
 [5]
 Villegas-Rojas also testified that her own fingerprint expert examined the packages and concluded that her prints were on the packages
 
 
 [6]
 Officer Miller did not testify that Torres-Morales was nervous; he was not asked about that. But the officer's report of the arrest stated that the driver "seemed unusually nervous and was biting her lip" and her movements seemed "as if she were in a hurry." I R. tab 39 at 1. The district court, in denying suppression, relied in part upon this report which had been introduced as evidence. I R. Supp. 2
 
 
 [7]
 The government contends that the encounter here was consensual and therefore no reasonable suspicion was required and no Fourth Amendment analysis is necessary. We disagree. Until an officer returns the driver's documentation, the driver is not free to go and the encounter is not consensual. See Soto, 988 F.2d at 1557
 
 
 [8]
 Defendants point out that the written consent relied on observations made while conducting the initial search. The verbal consent was voluntary, however, so the written consent is superfluous
 
 
 [9]
 The district court did not specifically address this issue but found that there was probable cause to arrest; thus, the district court indirectly held that the purse search was valid as an inventory search