**UNITED STATES of America, Plaintiff,**

v.

**James R. ARNOLD, Defendant.**

**No. 95–10046.**

United States District Court, D. Kansas.

Sept. 26, 1995.

Cyd K. Gilman, Office of Federal Public Defender, Wichita, KS, and Jon S. Womack, Womack & Ingram, Wichita, KS, for defendants.

Debra L. Barnett, Office of United States Attorney, Wichita, KS, for the U.S.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the defendant's motion to suppress, Doc. 24–25.

The court held a hearing on September 12, 1995. For the reasons set forth herein, the motion shall be denied. Trial is scheduled for September 26, 1995.

The defendant is charged in a six count indictment with possession of crack cocaine with intent to distribute, possession of a firearm by a convicted felon, use of a firearm during a drug trafficking crime, possession of crack cocaine, possession of marijuana, and making a false statement in the acquisition of a firearm from a licensed dealer. The offense behavior is alleged to have occurred on several different dates. The motion to suppress is aimed at the charges contained in Counts 4 and 5, charging the defendant with possession of crack cocaine and possession of marijuana. These charges arose from a traffic stop which took place on November 7, 1993.

The government presented the testimony of Wichita Police Department Officers Chris Doyle and Keith Rosenberg. Officer Doyle was on duty the morning of November 7, 1993. Doyle had been driving north on Webb Road and turned onto westbound Kellogg. Doyle observed a white Oldsmobile Cutlass traveling south on Webb Road which also turned onto westbound Kellogg. After turning, the Oldsmobile pulled behind Doyle's vehicle too closely and began tailgating. Doyle changed lanes to allow the Oldsmobile to pass. When the Oldsmobile passed Doyle, Doyle could see that the right tail light of the vehicle was out. Doyle pulled the vehicle over in the parking lot of the K–Mart in the 8600 block of East Kellogg at 5:08 a.m. Doyle testified that he has made numerous stops for tail light violations during his career as a Wichita Police Officer.

Doyle contacted the driver of the Oldsmobile (the defendant James Arnold) and asked for his license and proof of insurance. The defendant handed over his license but stated that he had no proof of insurance. Doyle ran the name James Arnold through the computer and learned that the defendant had two outstanding bench warrants for traffic violations from the City of Wichita. Doyle waited for Rosenberg to arrive as backup and then arrested the defendant on those outstanding warrants.

After arresting the defendant, Doyle asked if there was someone they could call to pick up the defendant's car so that it would not have to be impounded. The defendant stated that they should call his girlfriend, who was in room 227 of the Scotsman Inn at 465 South Webb Road. The defendant gave Doyle the key to the room to give to the girlfriend. Doyle in turn gave Rosenberg the room key and sent Rosenberg over to the Scotsman Inn to pick up the defendant's girlfriend.

Rosenberg returned with the girlfriend, who identified herself with the same first name but a different last name than that given by the defendant. The girlfriend stated that she was 18 years old and that she had a drivers license which was suspended. The officers thought the girlfriend looked young and were suspicious about the different names given by her and the defendant. When questioned further, she admitted her real name and stated that she was only 15 years old and did not have a drivers license.

The officers testified that they could not release the defendant's car to a minor. Fur-. ther, since the girl was under age and in a motel room with the defendant, the officers became concerned about whether any illegal sexual activity had occurred. The officers also wanted to know if there was anyone else who could pick up the defendant's car.

The defendant stated that a person named Matt might also be present in the motel room. The officers contacted their lieutenant, who instructed Rosenberg to take the girl back to the motel room and to attempt to make contact with Matt. The lieutenant advised the officers to inquire of Matt if the defendant had had sexual relations with the girl. Rosenberg was also instructed to contact the girl's mother and have the mother meet them at the motel.

Rosenberg then took the girl back to the motel. The girl told Rosenberg that Matt was not in the motel room, but that she had been staying at the motel room and had clothes in the room that she wanted to get. When Rosenberg arrived at the motel room, he found the door closed but not locked. Rosenberg entered the room alone, leaving the girl outside with another officer. Rosen-

berg testified that he was concerned about his own safety and the safety of the girl. Rosenberg noted that the girl had lied about her name and age and might have been lying about whether someone was in the motel room. Rosenberg wanted to determine if someone was present in the motel room before allowing the girl in to retrieve her belongings.

Rosenberg testified that he opened the door and stepped into the room. In looking around the room, Rosenberg saw a dresser to his right. On top of the dresser in plain view were a baggie containing a yellowish substance which appeared to be crack cocaine and a baggie containing suspected marijuana. Rosenberg also saw woman's clothing inside the room.

After discovering the drugs and checking the room to make sure no one else was present, Rosenberg did allow the girl and her mother to come into the room to retrieve the girl's belongings. The mother questioned her daughter about what had occurred at the motel. Rosenberg then allowed the girl to leave with her mother.

Meanwhile, Doyle had contacted a wrecker to tow the defendant's car. While waiting for the tow truck, Doyle received a call from Rosenberg. Rosenberg told Doyle to check the car again, because narcotics had been found in the motel room. Doyle searched the car, but found no contraband. Doyle searched the defendant and found $320 cash on his person.

After being advised of his rights, the defendant made a statement to the officers that he had been "wopped out" (i.e., dismissed without prejudice) on similar charges before and that he would be "wopped out" again.

The issues presented by the motion to suppress are whether the initial traffic stop was pretextual and whether the subsequent entry into the motel room was lawful.

■ The Tenth Circuit has held, "A pretextual stop occurs when an officer uses some legal justification to stop a person or vehicle in order to investigate unrelated criminal matters for which the officer lacks reasonable suspicion." *United States v. Fernandez,* 18 F.3d 874, 876 (10th Cir.1994); *see also*

*United States v. Dirden,* 38 F.3d 1131, 1139 (10th Cir.1994). An officer conducting a routine traffic stop may detain a motorist long enough to obtain a driver's license and vehicle registration, run a computer check, and issue a citation. Continued detention is justified only if specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion of criminal activity. *Fernandez,* 18 F.3d at 878.

■ When the police lack the reasonable suspicion necessary to support a stop, but use a minor violation to support a stop in order to search for evidence of an unrelated serious crime, the stop is pretextual. *United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir.1989). In *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988) the Tenth Circuit stated that:

> A pretextual stop occurs when the police use a legal justification to make the stop in order to search a person or place, or to interrogate a person, for an unrelated serious crime for which they do not have the reasonable suspicion necessary to support a stop. The classic example ... occurs when an officer stops a driver for a minor traffic violation in order to investigate a hunch that the driver is engaged in illegal drug activity.

*Id.* at 1515. An objective analysis of the facts and circumstances of a pretextual stop is appropriate, rather than an inquiry into the officer's subjective intent: a court should ask "not whether the officer *could* validly have made the stop, but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose." *Id.* at 1517. A stop is not pretextual if the police routinely stop individuals who drive in the manner of the defendant. *See United States v. Rivera,* 867 F.2d at 1263–64.

■ The defendant bears the burden of proving that the basis asserted as a justification for the traffic stop was pretextual. *United States v. Maestas,* 2 F.3d 1485, 1491 (10th Cir.1993). An improper motive, by itself, does not render a stop pretextual. To prove that the stop was pretextual, a defendant must show that the stop would not have occurred in the absence of an impermissible motive. *Id.* at 1489.

It is not disputed that the law requires a motor vehicle to have functional tail lights. The defendant did not deny that his tail light was burned out. The defendant did not present any evidence regarding the policy of the Wichita Police Department on stopping and ticketing vehicles for tail light violations. The defendant did not present any evidence that such a traffic stop was out of the ordinary. The defendant failed to make any showing that the traffic stop would not have occurred absent the allegedly impermissible motive. The court finds that the traffic stop of the defendant on East Kellogg on November 11, 1993 was not pretextual. The defendant's subsequent arrest for the outstanding warrants was proper.

As a courtesy to the defendant, Doyle asked if someone could retrieve the defendant's car so as to avoid the impound fee. Upon ascertaining that the defendant's girlfriend was under age, the officers could not entrust the defendant's car to her. Further, they were charged with her safekeeping until she could be released to a parent's custody.

■ The girlfriend was an occupant of the motel room and had the authority to consent to the officer's entry. *United States v. Iribe,* 11 F.3d 1553, 1556 (10th Cir.1993). The girl wished to enter the room to retrieve her personal belongings. However, Rosenberg became concerned about the girl's safety, since he was unsure whether someone else might be present in the room. That concern led to Rosenberg's decision to check the room before allowing the girl to go in. Rosenberg was lawfully in the doorway when be observed the drugs in plain view.

■ The defendant made a statement after being advised of his *Miranda* rights. This statement does not appear to have resulted from any police questioning but rather appears to have been volunteered. The statement is admissible. Accordingly, the motion to suppress shall be denied.

**IT IS BY THE COURT THEREFORE ORDERED** that defendant's motion to suppress (Doc. 24, 25) is hereby denied.