**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

REY RAMIREZ-BUENO,

Defendant-Appellant.

No. 02-5131

(N. D. Oklahoma)

(D.C. No. 2:02-CR-02-C)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY**, and **HARTZ**, Circuit Judges.

---

Rey Ramirez-Bueno was convicted after a jury trial of knowingly and intentionally possessing with the intent to distribute in excess of five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). Prior to trial, Mr. Ramirez-Bueno moved to suppress evidence discovered in his car by an Oklahoma Highway Patrolman during a December 13, 2001, traffic stop. The district court

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

denied the motion, and Mr. Ramirez-Bueno now challenges that ruling on appeal. For the reasons set forth below, we conclude that the stop of Mr. Ramirez-Bueno's car and the resulting detention were reasonable under the Fourth Amendment. We therefore affirm the district court's denial of Mr. Ramirez-Bueno's motion to suppress, as well as his conviction and sentence.[1]

## I. BACKGROUND

On December 13, 2001, Highway Patrolman David King observed a car with Nevada license plates fail to signal when exiting from the eastbound lane of I-44 in Creek County, Oklahoma. Trooper King followed the car through the toll booth and then stopped it. The car was driven by Mr. Ramirez-Bueno, and one passenger, Ms. Shawna Hall, was riding in the front seat.

Trooper King requested Mr. Ramirez-Bueno to step out of the car and then asked him for his driver's license. After Mr. Ramirez-Bueno retrieved the license, Trooper King requested Mr. Ramirez-Bueno to accompany him to the patrol car. Mr. Ramirez-Bueno complied. Trooper King then informed him of the reason for the stop and explained that he would issue him a warning. As Trooper

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not aid in the disposition of this appeal. See Fed. R. App. P. 34(f). We therefore grant the parties' request to decide this case on the briefs.

King prepared the warning, he asked Mr. Ramirez-Bueno who owned the car and where Mr. Ramirez-Bueno was going. Mr. Ramirez-Bueno told Trooper King that he was driving to Philadelphia to see his brother and his father for the holiday and that he planned to return to Las Vegas sometime around the first of the year. According to Trooper King, "the more questions that I asked [Mr. Ramirez-Bueno] about the trip, the more nervous he became. I could physically observe his chest rising and falling and his right leg was shaking on the floorboard." Aplt's App. at 36.

Trooper King asked Mr. Ramirez-Bueno if the car was a rental. Mr. Ramirez-Bueno responded affirmatively, and Trooper King then approached the right side of the car and asked Ms. Hall for the registration. As she retrieved it from the glove compartment, Trooper King asked where she was traveling. Ms. Hall responded that she was going to Kansas City to see her family for Christmas. Trooper King then asked if she and Mr. Ramirez-Bueno were planning to travel anywhere else, and Ms. Hall responded that they were not. Trooper King told her that Mr. Ramirez-Bueno had said that they were going to Philadelphia. Ms. Hall responded that they might go there for a vacation. Trooper King asked if Mr. Ramirez-Bueno had any family living in Philadelphia, and Ms. Hall responded that he did not, adding that all of his family lived in Las Vegas.

Trooper King returned to his patrol car and confronted Mr. Ramirez-Bueno with Ms. Hall's account of their travel plans. According to Trooper King, Mr. Ramirez-Bueno became extremely flustered. He stated that his mother and father were in Kansas City and that he and Ms. Hall might stay there for three or four days and then go to Philadelphia "if the weather was right." Id. at 40.

According to Trooper King, he then suspected that "some type of criminal behavior was being committed." Id. at 48. Nevertheless, after completing the warning citation, Trooper King handed Mr. Ramirez-Bueno his license and told him that he was free to go. Before Mr. Ramirez-Bueno exited the patrol car, Trooper King then asked him if he had a few minutes to answer some questions. According to Trooper King, "there was a little bit of confusion [about] what I was asking, so I attempted to rephrase it to allow him to understand what I said, and [Mr. Ramirez-Bueno] finally said, 'Questions? Okay.'" Id. at 41. Mr. Ramirez-Bueno then "shut the door back on the vehicle [a]nd failed to exit the vehicle." Id. Trooper King asked for permission to search the car, and Mr. Ramirez-Bueno agreed.

Trooper King returned to Mr. Ramirez-Bueno's car with Chibo, his trained, drug-sniffing dog. Chibo alerted on the windows on both sides of the car, and Trooper King discovered several packages in the door panels. Trooper King

-4-

placed Mr. Ramirez-Bueno and Ms. Hall under arrest   The packages weighed approximately twenty-eight pounds and tested positive for cocaine base.

The government charged Mr. Ramirez-Bueno with one count of possessing cocaine with the intent to distribute it, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii).  Mr. Ramirez-Bueno moved to suppress the evidence discovered during the traffic stop, and the court held a hearing during which it heard testimony from Trooper King and viewed a tape of the stop.

In denying the motion to suppress, the district court held that both Trooper King's initial stop of the car and his subsequent questioning were reasonable under the Fourth Amendment.  The court further concluded that Mr. Ramirez-Bueno had consented to the search of the car:

> I think the more serious question the Court always has when we have somebody who has a primary language different from English is the issue of understanding.  In viewing the tape, in listening to the tape, there was no indication that Mr. Ramirez does not understand English.  There is a good indication that – he speaks broken English when he talks, but understanding and speaking are two different things, and I could detect nothing that would lead me to believe that from my observation and from my watching the tape and listening to it that he did not understand the words when they were spoken.
> Officer King says that his impressions were clearly that he understood everything.  The Court would believe from the evidence that is presented that that's a fact, and therefore, there was a valid request, a valid consent, a knowing consent given for the search, and that the dog which alerted certainly gave Trooper King the probable cause to go further in the search itself. Once the dog

alerted, [Trooper King] had the right to go much further in the search to see what caused the alert.

Aplt's App. at 52-53.

Mr. Ramirez-Bueno was convicted after a jury trial. The court sentenced him to 240 months' incarceration.

## II. DISCUSSION

Mr. Ramirez-Bueno challenges the district court's ruling on two grounds. First, he argues that the scope of Trooper King's questioning exceeded the scope allowed by the Fourth Amendment during minor traffic stops. Second, he contends that his difficulties in understanding English establish that he did not validly consent to the search of his car.

In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous. United States v. Williams, 271 F.3d 1262, 1266 (10th Cir. 2001). "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). We consider the totality of the circumstances, viewing the evidence in the light most favorable to the government. Williams, 271 F.3d at 1266. The

-6-

ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. Id.

A. Reasonableness of the Detention

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). Such a stop, however, is more analogous to an investigative detention than a custodial arrest. United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995).

Accordingly, we analyze such stops under the principles developed for investigative detentions. See Terry v. Ohio, 392 U.S. 1 (1968); Williams, 271 F.3d at 1266-71 (applying Terry principles to a traffic stop). In assessing the reasonableness of an investigative detention, we ask (1) "whether the officer's action was justified at its inception," and (2) "whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

Here, Mr. Ramirez-Bueno does not dispute the district court's conclusion that Trooper King acted reasonably in making the initial stop for failing to signal a turn. Instead, he focuses on Trooper King's subsequent questioning, arguing that once he obtained the driver's license and registration, Trooper King lacked a reasonable suspicion to ask Ms. Hall about her travel plans. Thus, Mr. Ramirez-Bueno maintains, Trooper King's questioning exceeded the scope permitted during a routine traffic stop and violated the Fourth Amendment.

Mr. Ramirez-Bueno's argument is foreclosed by our precedent. As the government notes, this court has repeatedly held that during a routine traffic stop, an officer may ask about travel plans. See Williams, 271 F.3d at 1267 ("[W]e have repeatedly held (as have other circuits) that questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop."); United States v. West, 219 F.3d 1171, 1176 (10th Cir. 2000) (stating that "questions about travel plans are routine and 'may be asked as a matter of course without exceeding the proper scope of a traffic stop'") (quoting United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996)). These questions may be asked of both the driver and the passengers. See United States v. Rivera, 867 F.2d 1261, 1263 (10th Cir. 1989) (stating that an officer "could legitimately ask questions relating to the identity and travel plans of [the driver] and [his passenger]" and noting that the inconsistent answers provided by the two of them supported the finding of

reasonable suspicion). Here, Trooper King's questioning of Ms. Hall was limited to her travel plans and did not extend the length of the detention significantly. Thus, the questioning was reasonable under the Fourth Amendment.

## B. Consent to the Search

Mr. Ramirez-Bueno also contends that his limited knowledge of English indicates that he did not understand Trooper King's request to search the car and that, as a result, he did not validly consent. His argument is based upon the fact that he answered "yes" to Trooper King's question as to whether he owned the car and "yes" to the question of whether the car was a rental. He also points to Trooper King's testimony that he had to repeat several questions.

Whether Mr. Ramirez-Bueno voluntarily consented to the challenged detention or search is a question of fact, determined by the totality of the circumstances and reviewed for clear error. United States v. Zubia-Melendez, 263 F.3d 1155, 1162 (10th Cir. 2001). Here, the record supports the district court's conclusion that the search was consensual. At the hearing on the motion to suppress, Trooper King testified that he believed that Mr. Ramirez-Bueno "understood exactly what I was asking." Aplt's App. at 44. Moreover, as noted above, the district court reviewed the entire tape of the stop and "detect[ed] nothing that would lead [it] to believe" that Mr. Ramirez-Bueno did not understand Trooper King's request. Id. at 53. In light of Trooper King's

-9-

testimony and the district court's opportunity to review the tape of the stop, we discern no clear error in the district court's ruling.

### III.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's denial of Mr. Ramirez-Bueno's motion to suppress, as well as his conviction and sentence.

Entered for the Court,

Robert H. Henry
Circuit Judge