**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EDUARDO SILLAS-CEBREROS,

      Defendant-Appellant.

No. 04-3195
(D.C. No. 03-CR-10227-01-WEB)
(Kansas)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARIO MEZA-LOPEZ,

      Defendant-Appellant.

No. 04-3198
(D.C. No. 03-CR-10227-02-WEB)
(Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Eduardo Sillas-Cebreros (Sillas) and Mario Meza-Lopez (Meza) were jointly charged in a 2-count indictment as follows: in Count 1, both were charged with possession of over 500 grams of cocaine, with an intent to distribute, in violation of 21 U.S.C. § 841(a) and (b)(1)(B) and 18 U.S.C. § 2; and in Count 2, both were charged with conspiring with each other, and others, to possess and distribute 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b) and 846. Sillas, represented by the Federal Public Defender's Office, filed a motion to suppress evidence, which, according to counsel, had been illegally seized by the Kiowa County Sheriff's office from an automobile in which Sillas was riding as a passenger, and was being driven by his co-defendant, Meza. The stop occurred on a road in Kiowa County, State of Kansas, by Deputy Sheriff Maddux of the Kiowa County Sheriff's Office for speeding. Later, Meza, through his attorney, moved to adopt the motion to suppress filed by Sillas' attorney, which motion was granted. The government filed a response to the motion to suppress. The district court held an evidentiary hearing on the defendants' motion to suppress and took the matter under advisement. Three days later the district court entered a memorandum and order in which it denied the motion to suppress, and detailed its reasons for so doing.

Both defendants thereafter entered into a plea agreement wherein they pled guilty to the first count in the indictment, i.e., possession of more than 500 grams of cocaine

with an intent to distribute. The defendants' plea of guilty was a conditional plea of guilty, as permitted by Fed. R. Crim. P. 11(a)(2). The district court later sentenced Sillas to imprisonment for 63 months to be followed by a four-year term of supervised release. Meza was sentenced by the district court to imprisonment for 51 months to be followed by a three-year term of supervised release.[1] Each defendant, represented by their respective district court counsel, filed a notice of appeal and the two cases were separately briefed in this court.

On appeal, both defendants claim that the district court erred in denying their motion to suppress. The separate appeals will be consolidated for dispositional purposes. Some background facts will put the legal issues raised on appeal in focus.

At approximately 10:15 a.m. on November 23, 2003, the two defendants were traveling in their vehicle through Greensburg, Kansas. Meza was driving the vehicle, a gold 1993 Mercury Grand Marquis with Arizona plates, and Sillas was sitting beside Meza in the front seat. Officer Maddux of the Kiowa County's Sheriff's Office was following the vehicle, which was being driven at 46 m.p.h. in a 40 m.p.h. zone. Upon stopping the car and confronting the two occupants thereof, Officer Maddux noticed a

---

[1] Sillas's total offense level was 26, which, when coupled with his Criminal History Category of I, resulted in a guideline range of 63 to 78 months. Meza's total offense level was 24, which, when coupled with his Criminal History Category of I, resulted in a guideline range of 51 to 63 months.

number of air fresheners in the vehicle and the driver appeared "very nervous."[2]  Both

defendants spoke limited English.  Maddux first took Meza to his patrol car where Meza

was questioned about his driver's license, ownership of the vehicle, his travel plans and

what he knew about his passenger, Sillas.  Meza had a valid driver's license but told

Maddux that Sillas owned the vehicle.  The registration papers showed the car was owned

by a Freddy Vasquez.  Maddux then went back to the stopped vehicle and inquired of

Sillas concerning his ownership of the car.  Sillas stated he had owned the vehicle for

some five to six months, though the registration papers still indicated the title was in

someone else's name.  At that time Sillas was also questioned about their travel plans.  In

this regard, both Meza and Sillas said that their destination was Wichita, Kansas, where

they were going to visit Sillas' brother.  Officer Maddux went back to his vehicle and

called dispatch with the license and registration information.  Maddux learned that the car

was not reported stolen and Meza was given a warning citation, his driver's license and

papers were returned to him, and he was told he was free to leave.

     After Maddux had returned Meza's driver's license and assorted papers, and told

---

[2]In their motion to suppress, Sillas and Meza stated that Office Maddux, upon
approaching the defendants' vehicle after stopping it, "noticed a number of air fresheners
in the vehicle and that the driver appeared very nervous."  In its response to the
defendants' motion to suppress, the government stated that, upon approaching the
defendants' car, Maddux "observed three air fresheners hanging from the rear view
mirror and smelled a strong odor of some kind of fragrance coming from inside the car."
In their respective briefs in this Court, neither refers to, or qualifies, those statements on
this matter.

him he was free to go, Maddux again made contact with Sillas, the owner of the car, who was still sitting in the car. Maddux asked Sillas if he was carrying anything like marijuana or cocaine. Sillas interrupted Maddux and said, "No, no, do you want to check?" At the same time, Sillas was pointing to the inside of the vehicle. Maddux then went to the back of the vehicle and Sillas opened the trunk from inside the vehicle. Maddux saw nothing in the trunk and then proceeded to check the back seat of the interior of the vehicle. When Maddux moved to search the front seat of the vehicle, he asked Meza and Sillas to get out of the car. When Maddux looked into the glove compartment area, he noticed that the bolts that held the air bags were "scratched up," like they had been recently removed. Maddux then removed the bolts that held the passenger seat air bag in place and located a "false compartment" and obtained therefrom a pair of green rubber gloves and a vacuum sealed package. Ultimately, Maddux located approximately three kilograms of cocaine in the compartment. Sillas and Meza were both arrested and taken to police headquarters, where they were read their *Miranda* rights.

On appeal, both defendants argue that their respective Fourth Amendment rights were violated when Officer Maddux "prolonged" their detention after a lawful traffic stop by questioning them about their "destination." We are not persuaded by this argument. We have repeatedly held that questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop. *United States v. Williams,* 271 F.3d 1262, 1267 (10th Cir. 2001) (questions relating to driver's travel ordinarily fall within the scope of a traffic

- 5 -

stop).[3] *See also United States v. Hernandez,* 93 F.3d 1493, 1499 (10th Cir. 1996).

(officer may inquire about travel plans without exceeding the scope of the stop); *United States v. Rivera,* 867 F.2d 1261, 1262 (10th Cir. 1989)(questions can be asked of driver and passenger).

Sillas, but not Meza, also argues that the search of the front seat and air bag compartment of his car exceeded the scope of the search to which he had previously consented.[4] In the district court, Sillas claimed he only consented to a search of the trunk and not the interior of the car or the dismantling of the airbag compartment. The district court noted that in giving his verbal consent to search the car, Sillas pointed to the "interior" of the car, and not just the trunk. In the district court and on appeal, Sillas also argues that the scope of consent did not include the dismantling of the airbag compartment, thus rendering it useless. The district court in its order indicated that though this was a "close"question, it ultimately held that Silas' "consent" was to search the entire vehicle. In this regard, the court also observed that neither defendant objected to Maddux's entry into the car's interior. In *United States v. Pena,* 920 F.2d 1509, 1512, 1514-15 (10th Cir. 1990), we upheld the validity of the search of a motor vehicle when, after obtaining the defendant's general consent to search the car, the officer observed

---

[3]Counsel for Sillas in his brief acknowledges that the facts in the present case are "very similar" to the facts of *Williams*, and then goes on to say that he "would preserve this issue for a further review in a petition for certiorari to the Supreme Court."

[4]In his brief, counsel for Sillas stated "For purposes of this appeal, Sillas is not challenging the district court's finding that consent to search the vehicle was given by Sillas."

"loose, cracked and missing screws on the interior molding and tool marks on the screws and molding," all of which led, eventually, to the officers removal, with the aid of a screwdriver, of the rear quarter panel vent and a piece of cardboard under it. *See also United States v. Marquez,* 337 F.3d 1203, 1209 (10th Cir. 2002)(consent to search vehicle includes partial dismantling of automotive components); *United States v. Ramstad,* 308 F.3d 1139 (10th Cir. 2002)(consent to search for drugs implies officer may look wherever drugs might be hidden). Maddux did not exceed the scope of consent given by Sillas when he looked in the airbag compartment, which, according to Maddux, was frequently used to hide drugs.

## II.

Both cases were fully briefed and set for oral argument on March 11, 2005. Prior to that date, on motion of Sillas, his case was ordered submitted on the briefs. On April 12, 2005, Sillas (but not Meza) with the permission of this Court, filed a supplemental brief in which he cited the then recent case of *United States v. Booker-Fanfan,* 125 S.Ct. 738 (2005), wherein the Supreme Court held, *inter alia*, that the Sentencing Guidelines were not "mandatory," but only "advisory." Counsel argued in his supplemental brief that Sillas's sentence should be vacated and his case should be remanded for resentencing consistent with *Booker-Fanfan.* Thereafter, on May 2, 2005, pursuant to order of this Court, the government filed a supplemental brief in response to Sillas's supplemental brief. It was the government's position, as stated in its supplemental brief, that the district

court did not commit plain error, "because there were no judge found facts which increased the appellant's sentence, [and that] this case involves error of a non-constitutional nature. Moreover, the appellant was sentenced within his guideline range and there was no indication from the court that it was displeased with the sentence it was required to give under the guidelines."

At sentencing, there was no contention that the guidelines were only "advisory," and not "mandatory,"or any suggestion that the district court could, if it desired to do so, have sentenced Sillas to less than 63 months. Indeed *United States v. Blakely*, 542 U.S. 296 (2004) was not announced until after Sillas was sentenced, and *Booker-Fanfan* was not announced until several months after *Blakely*. Further, the sentencing issue was not mentioned in Sillas's initial brief in this Court. It was first raised in its supplemental brief.

The issue of whether the Guidelines were "mandatory" or "advisory," not having been raised in the district court, the first question for us is whether the matter can be raised for the first time on appeal. Both *Blakely* and *Booker-Fanfan* were announced after Sillas was sentenced but before we have disposed of his appeal. In such circumstance, we apply *Booker-Fanfan* to the present appeal. We are governed by the law as it exists at the time of our review, and not as it may have existed at the time of sentencing. *Booker-Fanfan,* 125 S.Ct. at 768-69, and *United States v. Lott,* 310 F.3d 1231, 1238 (10th Cir. 2002). Such being the case, our resolution of the appealability

question is <u>not</u> controlled by Fed.R.Crim.P. 52(a), i.e., disregard of harmless error. Rather, it is controlled by Fed.R.Crim.P. 52(b), i.e., plain error that affects substantial rights may be considered on appeal even though such was not raised in the trial court if such affects the essential integrity and fairness of the judicial process[5]. So, we must first determine whether Sillas has met the so-called 4-prong test mentioned in *United States v. Gonzales-Huerta*, 403 F.3d 727(10th Cir. 2005).

We now know that the district court committed plain error when it treated the Guidelines as mandatory. *Booker-Fanfan*, 125 S. Ct. at 756. In *Gonzales-Huerta*, this Court, sitting en banc, held that the defendant also bears the burden of showing that his substantial rights have been adversely affected, and that he may do so by showing a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 731. As applied to the instant case, there is nothing in the present record which would indicate that the district court would have sentenced Sillas differently than it did, i.e., nothing to show a reasonable probability that the district court would have sentenced Sillas to <u>less</u> than 63 months. Such, of course, would be "possible," since the guidelines are now only advisory, but a "possibility" does not prove

---

[5]In his supplemental brief, counsel first argues that on the basis of *United States v. Labastida-Segura*, 396 F.3d 1140 (10th Cir. 2005), we should vacate Sillas's sentence and remand for resentencing. We disagree. In *Labastida-Segura* the question of whether the Guidelines were mandatory, or not, <u>was</u> raised in the district court. In our case, it was <u>not</u> raised. Because it was raised in that case, we were there concerned with Fed.R.Crim.P.52(a). Not having been raised in the present case, we are concerned with 52(b). Counsel in the present case does argue, alternatively, that Sillas has met the 4-prong test. As indicated, we hold that he has not met requirements 3 and 4 of the 4-prong test.

"reasonable probability." The present case differs from such cases as *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819-20 (10th Cir. 2005) and *United States v. Williams*, 403 F.3d 1188, 1198 (10th Cir. 2005), where the district court at sentencing indicated quite clearly, that but for the minimum sentence set forth in the guideline range, which was then believed to be "mandatory," it would have sentenced the defendant to a lesser term of imprisonment than the guideline minimum. The district court in the present case did <u>not</u> so opine.

III.

Accordingly, Sillas's conviction and sentence are affirmed. Meza's conviction is affirmed, and he has not challenged in this appeal his sentence, which is now affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge