**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.                                                  No. 96-2235

KENNETH LINDEN DOYLE,

    Defendant-Appellant.

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-95-624-HB)

---

Todd B. Hotchkiss, of Frechette & Associates, Albuquerque, New Mexico, for
Defendant/Appellant.

Presiliano A. Torrez, Assistant United States Attorney (John J. Kelly, United
States Attorney and Mick I. R. Gutierrez, Assistant United States Attorney, with
him on the brief), Las Cruces, New Mexico, for Plaintiff/Appellee.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **BRORBY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Appellant Kenneth Linden Doyle was indicted on one count of possession with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(A), and 18 U.S.C. § 2, and one count of criminal forfeiture under 21 U.S.C. § 853. After an evidentiary hearing, the district court denied Mr. Doyle's motion to suppress evidence obtained during a vehicle stop by a border patrol agent, and he was subsequently convicted by a jury on both counts. On appeal, Mr. Doyle argues that the district court improperly denied his motion to suppress on the ground that the stop and subsequent search of his vehicle violated the Fourth Amendment. For the reasons stated below, we affirm.

## I

Early in the morning of November 8, 1995, United States Border Patrol Agent Joseph Muniz was working approximately nine miles from the United States-Mexico border near Columbus, New Mexico, observing traffic on New Mexico Highway 11. At approximately 7:54 a.m., Agent Muniz received a call informing him that a sensor designed to detect intrusions into the United States from Mexico had activated on a dirt road approximately three miles west of the Columbus port of entry. Agent Muniz, who had been a border patrol agent for seven years and was familiar with the Columbus area, knew that there were no

homes or businesses in the immediate vicinity of the sensor and that the area was open range with sagebrush and other local vegetation growing there. He was also aware that after 8:00 a.m. the traffic on Highway 11 was generally slow with the bulk of travelers being tourists on their way for short visits to Mexico. At the hearing on the motion to suppress, Agent Muniz testified that Highway 11 is a well-known smuggling corridor for illegal aliens and narcotics since it is the only paved road in the area running north from the border.

Immediately after receiving the call, Agent Muniz looked at his watch and began timing, estimating it would take approximately 13-16 minutes for a vehicle to travel from the sensor to his location on Highway 11. Approximately 16 minutes after he began timing, Mr. Doyle appeared driving north in a 1988 Ford Crown Victoria, a large sedan. Agent Muniz testified he knew alien smuggling had increased in the area over the past several years and that alien smugglers preferred to use pick-ups, vans, or large sedans. He further observed there were no vehicles immediately in front of or behind Mr. Doyle, there were apparently no passengers in the car, and it displayed Florida license plates. At that point, he pulled in behind the vehicle and began to follow it.

While following the car, Agent Muniz made a radio request for owner's registration information and a 72-hour lane check in order to determine if the vehicle had been recorded as crossing through a port of entry. The lane check

revealed no record of the vehicle, while the computer check indicated the vehicle, which had not been reported stolen, was registered to an Angelo Malavais in Florida. Agent Muniz continued to follow the car for approximately five miles, during which time he noticed a branch caught in the trim on the driver's side. Agent Muniz knew travel from the sensor location to Highway 11 would require passage on a dirt road lined with brush similar to the branch hanging from Mr. Doyle's car.

Suspecting that Mr. Doyle's vehicle might be the one that had activated the sensor, Agent Muniz stopped it for inspection at mile marker 14. As he approached on foot, he saw what he believed to be several fresh scratches running the length of Mr. Doyle's car. As he got closer, he also noticed branches stuck to the car and baggage in the back seat. Upon reaching the car, Agent Muniz questioned Mr. Doyle who said he was a United States citizen and that the vehicle was owned by his friend, Mark Wilson. Agent Muniz then asked Mr. Doyle his destination, to which he replied he was traveling to Phoenix to return the car to its owner. When Agent Muniz asked Mr. Doyle if he had been to Mexico, he said he had not.

His suspicion further aroused, Agent Muniz asked Mr. Doyle for identification. Agent Muniz testified that upon seeing Mr. Doyle's driver's license, he asked for permission to search the trunk of the car, which Mr. Doyle

granted. Mr. Doyle opened the trunk for Agent Muniz, who then looked inside "and saw a couple of crates or boxes with a lot of stuff in there, garden hose and other stuff in the trunk." Rec., vol. III, at 14. Agent Muniz testified he then asked Mr. Doyle for permission to search the vehicle with his canine, to which Mr. Doyle also consented. During the search, the canine alerted. Agent Muniz testified that approximately three minutes elapsed from the time he stopped Mr. Doyle to the time the dog alerted.

After the dog alerted and shortly after Agent Muniz had returned the dog to his vehicle, Border Patrol Agent Cowan arrived. Agent Muniz then opened the rear passenger door on the driver's side, noticed the upright portion of the back seat was loose, pulled it forward, and observed what appeared to be a trap door to a hidden compartment. Upon dismantling the compartment, Agents Muniz and Cowan removed several packages containing cocaine.

Relying on these facts, the district court held the stop of Mr. Doyle's vehicle was based on reasonable suspicion, the subsequent detention was not excessive, and Mr. Doyle voluntarily consented to the canine search.

## II

When reviewing an order granting or denying a motion to suppress, we accept the trial court's findings of fact unless clearly erroneous and consider the

evidence in the light most favorable to the district court's determination. See United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). "'The ultimate determination of reasonableness under the fourth amendment is, however, a conclusion of law that we review de novo.'" United States v. Guillen-Cazares, 989 F.2d 380, 382 (10th Cir. 1993) (quoting United States v. McKinnell, 888 F.2d 669, 672 (10th Cir. 1989)).

Mr. Doyle advances the following arguments to support his contention that the district court erred in denying his motion to suppress: (1) Agent Muniz did not have reasonable suspicion to stop his vehicle; (2) Agent Muniz's questioning and subsequent request to search the car exceeded the scope of the investigative detention and thus constituted an unreasonable search and seizure; (3) the narcotics seized from Mr. Doyle's vehicle were the product of an unlawful detention; and (4) Mr. Doyle's consent to the canine search of his vehicle was not voluntary and therefore did not qualify under the consent exception to the Fourth Amendment. We address these arguments in turn.

## A

We begin with Mr. Doyle's claim that Agent Muniz did not have reasonable suspicion to stop his vehicle. We analyze traffic stops under the principles applicable to "investigative detentions" set forth by the Supreme Court in Terry v.

Ohio, 392 U.S. 1 (1968).  Under Terry, we must determine the validity of a stop according to "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Id. at 20.  We have been frequently called upon to apply this dual analysis to the question of whether and when border patrol agents may detain vehicles they suspect of carrying illegal aliens or other contraband into the United States.

At locations other than the actual border or its functional equivalent, border patrol officers may stop vehicles "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that a crime has been committed.  United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975); United States v. Lopez-Martinez, 25 F.3d 1481, 1483 (10th Cir. 1994).  In an effort to guide our inquiry regarding reasonable suspicion, the Supreme Court has set out the following non-exhaustive test:

> "In determining whether there is reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including: (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded."

Id. at 1483-84 (quoting United States v. Monsisvais, 907 F.2d 987, 990 (10th Cir.

-7-

1990) (citing Brignoni-Ponce, 422 U.S. at 884-85)).  This test does not purport to provide outcome determinative criteria, nor does it require us to view any fact in isolation.  Rather, our examination for reasonable suspicion must take into account the "'totality of the circumstances'" surrounding the stop.  See id. at 1484 (quoting United States v. Sokolow, 490 U.S. 1, 8 (1989); United States v. Barbee, 968 F.2d 1026, 1028 (10th Cir. 1992)).

A fundamental factor supporting an investigatory border patrol stop based on reasonable suspicion is the likelihood that the subject vehicle has crossed the border.

> "When a person is traveling within our country, . . . we are more hesitant to allow interference [than at the border], even if the vehicle is close to the border.  For this reason, this Court has repeatedly emphasized that one of the vital elements in the Brignoni-Ponce reasonable suspicion test is whether the agents had reason to believe that the vehicle in question recently crossed the border."

United States v. Venzor-Castillo, 991 F.2d 634, 638 (10th Cir. 1993) (quoting United States v. Melendez-Gonzalez, 727 F.2d 407, 411 (5th Cir. 1984)).

We agree with the district court's conclusion that the totality of the circumstances surrounding the investigatory stop of Mr. Doyle's car created reasonable suspicion that Mr. Doyle had recently crossed the border.  Given the placement of the sensor in an area away from the port of entry, the timing of Mr. Doyle's arrival at the agent's location, the absence of other traffic, and the condition of the vehicle, it was reasonable for Agent Muniz to suspect that Mr.

Doyle's entry into the United States was illegal.

Mr. Doyle argues that reasonable suspicion was lacking because no single fact articulated by Agent Muniz distinguished Mr. Doyle's presence on Highway 11 from that of a person engaged in legitimate travel. Mr. Doyle asserts, for example, that the sensor alert does not constitute per se reasonable certainty of a border crossing, but rather merely indicates that a vehicle has activated the sensor. He contends that the dusty appearance of his car as well as the scratches and the presence of brush and branches are in no way uncharacteristic of cars legitimately traveling through a region filled with dirt roads lined with sage brush and creosote. He notes that Highway 11 is a legitimate avenue of travel from Columbus-Deming, an area with a population of 5,000, to Phoenix, Arizona, and that there was nothing inherently suspicious about his Florida license plates. Finally, Mr. Doyle points out his driving and demeanor were not suspicious and his car was not riding low.

These claims are ultimately unpersuasive, however, since we have repeatedly stated that no single factor either requires or precludes a finding of reasonable suspicion.

> To be sure, an officer's specific articulable facts, when viewed in isolation, will often comport with general notions of innocent travel rather than criminal activity. . . . Our task, however, is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious. Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed

> together through the lens of a reasonable law enforcement officer, justified a brief roadside detention . . . .

Lopez-Martinez, 25 F.3d at 1484.

While we might be inclined to agree that there was no reasonable cause for suspicion based on the presence of a car on Highway 11 with an out-of-state license plate, or a car covered with scratches, dust, and branches, these were not the only factors that entered into Agent Muniz's decision to stop the car, nor were they treated as such by the district court in denying the motion to suppress. Rather, the key factor in the district court's decision was the highly unusual circumstance of the sensor activation coinciding with the appearance of Mr. Doyle's car on Highway 11 within the exact span of time it would take a car to travel there from the location of the sensor. Since an intrusion into the United States at a location other than an authorized checkpoint is unlawful regardless of its underlying purpose, Agent Muniz did not need to suspect that Mr. Doyle was transporting illegal aliens in order to justify the investigatory stop of his car. The stop therefore did not violate the Fourth Amendment.

**B**

Having determined that the stop at issue was "justified at its inception" under Terry, 392 U.S. at 20, we address briefly Mr. Doyle's remaining arguments, namely that Agent Muniz's request to search the car exceeded the scope of the

-10-

investigative detention, and that Mr. Doyle did not voluntarily consent to the search of his vehicle. We note at the outset the district court made specific findings that Agent Muniz's questioning of Mr. Doyle was based on reasonable suspicion, that Mr. Doyle's consent to the search was voluntary, and that Agent Muniz's testimony was true and credible. We reiterate that we are bound to construe the case in the light most favorable to the district court's disposition and that we cannot overturn the district court's findings of fact unless they are clearly erroneous.

In examining Mr. Doyle's legal arguments, we find none that would require us to overturn the district court's decision. Agent Muniz had reasonable suspicion to continue questioning Mr. Doyle and to request permission to search his car based on the inconsistent information he provided concerning the ownership of the vehicle. See United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995) (driver's inability to prove lawful possession of vehicle and officer's skepticism concerning amount of luggage justified reasonable suspicion); United States v. Horn, 970 F.2d 728, 732 (10th Cir. 1992) (defendant's proffer of suspicious ownership papers and title in another person's name justified reasonable suspicion); United States v. Pena, 920 F.2d 1509, 1514 (10th Cir. 1990) (driver's claim that car belonged to one person when it was registered to another justified reasonable suspicion). The short detention therefore did not

violate the Fourth Amendment.[1]

Whether or not a party has voluntarily consented to a search is a question of fact that the district court must evaluate in view of the totality of the circumstances.  See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973); United States v. McRae, 81 F.3d 1528, 1536-37 (10th Cir. 1996).  Consent to search may be voluntary even though the consenting party is being detained at the time consent is given.   See United States v. Watson, 423 U.S. 411, 424 (1976) ("[T]he fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."); United States v. Soto, 988 F.2d 1548, 1557 (10th Cir. 1993) ("Valid consent may be given by a person being detained.").  Moreover, our cases dictate the conclusion that failure by law enforcement officials to advise a detainee of his Fourth Amendment right to refuse consent does not necessarily require a finding that consent was involuntary.  See United States v. Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993) (failure to advise lawfully detained defendant of his right to refuse consent only one factor in determining whether consent was voluntary); United States v. Manuel, 992 F.2d 272, 275 (10th Cir. 1993) (same).  Finally, we find nothing in the record to indicate the district court clearly erred in finding that Mr. Doyle

---

[1]Because we hold that Agent Muniz's detention of Mr. Doyle was lawful, we do not address his claim that his consent to search and the evidence subsequently obtained should be suppressed as the fruits of an unlawful detention.

voluntarily consented to the canine search.

### III

In sum, we hold that Agent Muniz had reasonable suspicion to stop Mr. Doyle's car and that his request to search Mr. Doyle's vehicle did not exceed the scope of the detention. In addition, the district court's finding that Mr. Doyle's consent to Agent Muniz's search of the car was clear and voluntary is not clearly erroneous. The judgment of the district court is **AFFIRMED**.