**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 27 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ACOSTA-CHAVEZ,

Defendant-Appellant.

No. 97-3288
(D.C. No. 97-40004-02-DES)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL**, **HENRY**, and **BRISCOE**, Circuit Judges.

---

Defendant Jose Acosta-Chavez appeals the district court's denial of his

motion to suppress evidence. We have jurisdiction under 28 U.S.C. § 1291 and

affirm.

I.

Defendant was driving eastbound on Interstate 70 in central Kansas on

December 21, 1996. Kansas Highway Patrol Trooper Devore stopped defendant's

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

car at 8:43 a.m. for traveling 76 mph in a 70-mph zone, recording the stop on a video camera mounted in his patrol car. Devore asked to see defendant's license, registration, and proof of insurance. Defendant was visibly nervous. He told Devore the car was rented and Devore asked to see the rental agreement. Defendant's father was in the front passenger seat of the stopped car and he appeared to be ill. Devore asked if he was all right. Defendant stated his father had undergone heart surgery and was having a little pain. Devore told defendant to let him know if he needed an ambulance.

Defendant did not produce a car rental agreement and Devore asked about his travel plans. Defendant stated they were traveling from Los Angeles to Kansas City to visit his sister. Defendant did not know her address but thought it was on Burlington Street. Devore again asked for the car rental agreement and asked defendant what he did for a living. Defendant replied he was a truck driver and then asked if there was a nearby hospital. Devore said there was and again told defendant to let him know if his father needed an ambulance. Defendant still had not found the car rental agreement and Devore told him to keep looking for it.

Devore called in defendant's California driver's license number at 8:48 a.m. Trooper Weigel arrived to assist Devore at 8:48 a.m. and, after briefly speaking with Devore, Weigel approached the stopped car and spoke with defendant. This conversation was not recorded. Weigel testified that defendant

wanted to take his father to the hospital, but Weigel told him it would be best to call an ambulance because the closest hospital was twelve miles away. According to Weigel, defendant agreed. However, in a subsequent taped conversation, Weigel said he had asked defendant if his father needed a doctor. Defendant replied they needed to get to a hospital, but Weigel said, "No. We'll call an ambulance." Record Addendum at 5.

The troopers noted the car was riding low as if it had a heavy load in the trunk, that defendant did not know his sister's address in Kansas City, that defendant could not find the car rental agreement, and that defendant and his father both appeared extremely nervous. An ambulance was called at 8:52 a.m. and the troopers continued to check on the condition of defendant's father.

The dispatcher called Devore at 8:54 a.m. and told him defendant's license was valid and apparently informed him the car registration tag was not on file as stolen. At 8:56 a.m., the dispatcher reported the Triple I check showed defendant attempted to enter the United States by false claim. The troopers checked on defendant's father, and then asked the dispatcher to run an EPIC check [1] on the car

---

[1] EPIC is the El Paso Intelligence Center, a computer database maintained by the federal government for use by all law enforcement agencies with information about persons and vehicles known or suspected to be involved in drug trafficking. See United States v. Streifel, 665 F.2d 414, 416 (2d Cir. 1981); United States v. $189,825.00 in United States Currency, ___ F. Supp. ____, 1998 WL 309228 *13 n.6 (N.D. Okla. 1998).

at 9:00 a.m. Devore also wanted the dispatcher to check with Enterprise Rental in the Los Angeles area, but told her he would have to get additional information for her. Devore checked on defendant's father at 9:05 a.m. and asked for the father's identification, telling him it was needed for the ambulance. Devore called in defendant's father's identification at 9:07 a.m. Weigel checked on the father at 9:09 a.m. and commented he did not look well. At 9:10 a.m., the dispatcher reported there was nothing on the father, but the car had crossed the United States-Mexican border several times during the past three months. Weigel testified most U.S. rental companies do not permit their rental vehicles to enter Mexico.

The ambulance arrived at 9:12 a.m. and defendant's father was moved to the ambulance. The troopers and defendant accompanied the ambulance in their respective cars, arriving at the hospital at 9:37 a.m. At the hospital, Devore returned defendant's driver's license, gave him a warning ticket for speeding, said "Okay. That's all I got," Record Addendum at 19, and then inquired if he could ask a question while defendant's father was being moved from the ambulance. Without receiving an answer, Devore asked if defendant had any drugs, weapons, or contraband in his car. Defendant replied that he did not and Devore asked if they could search the car. Defendant's response was inaudible and Devore asked, "It's okay to search the contents, everything in it?"     Id.  Defendant said, "Yeah."

-4-

Id. Devore opened the trunk and found eighty-six bundles of marijuana. The troopers immediately arrested defendant.

Devore testified if defendant had not consented to a search, Devore would not have let defendant leave and he would have called for a dog team to sniff for drugs. Devore suspected defendant was transporting drugs because the car appeared to be heavily loaded in the back. In addition, defendant did not know his sister's address in Kansas City and he had no car rental agreement for the car. Further, rental cars are commonly used by drug traffickers and it was reported this car had crossed the United States-Mexican border several times during the past three months. Both defendant and his father appeared to be extremely nervous. Devore found it suspicious that defendant did not demand an ambulance for his father or help move him from the car to the ambulance, or even get out of the way when his father was moved to the ambulance. Devore believed both defendant and his father had criminal records, but the record shows the dispatcher only reported defendant had some kind of prior immigration offense, for which defendant was apparently not prosecuted. There was no report that defendant's father had a criminal record.

Defendant and his father were charged with possession of and conspiracy to possess 357 pounds of marijuana with intent to distribute. Defendant moved to suppress the drugs found in the car. After the district court denied the motion,

defendant entered into a plea agreement. The conspiracy charge was dismissed and defendant pleaded guilty to the possession charge, but he reserved the right to appeal denial of the motion to suppress. Defendant was sentenced to sixty months' imprisonment.

II.

Defendant contends his detention was unconstitutional, arguing once the troopers knew the car had not been reported stolen they had no reason to detain him. We disagree. [2]

The government bears the burden of proving a warrantless seizure was justified under an exception to the constitutional warrant requirement. United States v. Carhee, 27 F.3d 1493, 1496 (10th Cir. 1994). The government argues the seizure of defendant was justified as an investigative detention supported by reasonable articulable suspicion. In an appeal from a district court's denial of a motion to suppress, findings of historical fact are reviewed only for clear error, but whether the historical facts, viewed from the standpoint of an objectively

---

[2] We note defendant lacks standing to challenge the search of the car directly because he could not show any possessory or ownership interest in the car. After the arrest, the troopers learned neither defendant nor his father was named on the car rental agreement. A defendant in sole possession and control of a car rented by a third party has no standing to challenge a search of the car. United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995). However, he can challenge the search indirectly as the result of a roadside detention he contends was unlawful. See United States v. Shareef, 100 F.3d 1491, 1499-1500 (10th Cir. 1996).

reasonable police office, amount to reasonable suspicion is a question of law subject to de novo review on appeal. Ornelas v. United States, 517 U.S. 690, 696-97 (1997). We view the evidence in the light most favorable to the government. United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir.), cert. denied 118 S. Ct. 326 (1997). Here, the district court made no findings of fact but the facts are not in dispute. The entire stop is on videotape and the troopers' testimony is uncontroverted. The troopers had reasonable articulable suspicion of two crimes that justified defendant's detention--that the car was stolen and that defendant was transporting illegal drugs.

An investigative detention short of full arrest must be supported by reasonable articulable suspicion--a particularized and objective basis for suspecting the particular person stopped of criminal activity. United States v. Cortez, 449 U.S. 411, 417-18 (1981). An inchoate and unparticularized suspicion or hunch is insufficient. The Fourth Amendment requires some minimal level of objective justification for the detention. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, and less than the fair probability that contraband or evidence of a crime will be found that is required for probable cause. United States v. Sokolow, 490 U.S. 1, 7 (1989).

In evaluating the validity of an investigative detention, the courts must consider "the totality of the circumstances--the whole picture." Id. at 8; Cortez,

449 U.S. at 417.  A minimum number of factors is not required to constitute reasonable suspicion.  Nor are there any outcome determinative criteria.  Such an approach would be antithetical to the totality of the circumstances inquiry. United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994).

Wholly lawful conduct may justify suspicion of criminal activity.  Factors that are not by themselves proof of illegal conduct and that are consistent with innocent travel may, taken together, amount to reasonable articulable suspicion. Sokolow, 490 U.S. at 9-10.  In making a determination of reasonable articulable suspicion, "our task . . . is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious.  Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention."    United States v. Doyle, 129 F.3d 1372, 1376 (10th Cir. 1997).

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same--and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law

enforcement." Cortez, 449 U.S. at 418. Trained officers aware of the modes and patterns of operation of certain kinds of lawbreakers can draw inferences and make deductions that might well elude untrained persons. Id.

In addition to issuing a citation or warning for a traffic infraction, an officer conducting a routine traffic stop may run computer checks on the driver's license, the vehicle registration, other proof of authorization to operate the vehicle, outstanding warrants on the driver, or whether the vehicle has been reported stolen. United States v. Mendez, 118 F.3d 1426, 1429 (10th Cir. 1997); United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997). The officer may detain the driver and the vehicle as long as reasonably necessary to make these determinations or to issue a citation or warning. Id. Inability of the driver to produce some indicia that he is authorized to operate the vehicle gives rise to an objectively reasonable suspicion that the vehicle may be stolen. United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1998).

A rental contract may serve as proof of authority to operate a vehicle. See United States v. Jones, 44 F.3d 860, 872 (10th Cir. 1995). Here, the dispatcher reported to the troopers the car had not been reported stolen, but that did not establish defendant was authorized to operate the car. Defendant could not produce a car rental agreement or other proof he was authorized to operate the rental car. Consequently, the troopers could lawfully detain defendant to

investigate whether the car was stolen.

The troopers also had reasonable articulable suspicion that defendant was transporting drugs. In determining whether there was reasonable suspicion, some factors relied on by the police must be dismissed outright as so innocent or so susceptible to varying interpretations as to be innocuous. Wood, 106 F.3d at 946; United States v. Lee, 73 F.3d 1034, 1039 (10th Cir. 1996). Defendant's behavior when the ambulance arrived for his father is one such factor, as his behavior is so susceptible to varying interpretations as to be innocuous.

However, other factors cannot be dismissed outright. The car appeared to be heavily loaded because the rear-end of the car was riding low. The Supreme Court has recognized this observation as a factor supporting reasonable suspicion that a vehicle is transporting drugs. See United States v. Sharpe, 470 U.S. 675, 682 n.3 (1985). There are many innocent explanations for a heavily-loaded vehicle. The car could have been loaded with luggage and Christmas presents. However, the heavy load was suspicious because only an extraordinary amount of luggage and Christmas presents for a family visit by two men would make a car ride low. The vehicle was a rental car, commonly used by drug traffickers, and defendant did not have a car rental agreement or proof of authorization to drive the car, which we have recognized as a factor supporting suspicion of contraband as well as car theft. See United States v. Christian, 43 F.3d 527, 530 (10th Cir.

-10-

1994);  United States v. Soto , 988 F.2d 1548, 1555 (10th Cir. 1993).

Defendant did not know his sister's address in Kansas City. [3]  See Mendez ,
118 F.3d at 1431-32.  Both defendant and his father appeared to be extremely
nervous.  Although this could be explained by the father's illness, the troopers
noted on the videotape that the father seemed to get worse whenever they
approached the car, which suggests their presence was the cause.  While
nervousness is so common among persons stopped for traffic violations that it
does not provide significant support for suspicion of more serious criminal
activity,  see Wood, 106 F.3d at 948, nervousness, particularly extreme
nervousness, is nonetheless one of the totality of circumstances that can provide
some support for reasonable suspicion.      See, e.g., United States v. Soto-
Cervantes , 138 F.3d 1319, 1324 (10th Cir. 1998),     petition for cert. filed   (June 10,
1998);  Hunnicutt , 135 F.3d at 1350;   United States v. Kopp  , 45 F.3d 1450, 1454
(10th Cir. 1995);   Soto , 988 F.2d at 1556.  Also important is the fact that the EPIC
drug trafficking database showed the car had crossed the United States-Mexican
border several times in the past three months, which most car rental companies do
not allow and which lends support to the suspicion that the car was being used to

---

[3]  After making a stop for illegal driving conduct, an officer may
legitimately ask questions relating to identity and travel plans of the driver and
passengers and ownership of the car.     United States v. Rivera   , 867 F.2d 1261,
1263 (10th Cir. 1989).

transport drugs.  See Mendez, 118 F.3d at 1431-32.  Cf. Wood, 106 F.3d at 946-48.  Considering all of these factors, we conclude the troopers were justified in detaining defendant and his father.

Defendant contends the detention was unreasonably prolonged.  An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the detention." United States v. Gutierriez-Daniez, 131 F.3d 939, 942 (10th Cir. 1997), cert. denied 118 S. Ct. 1334 (1998).  There is no fixed time limit.  See Sharpe, 470 U.S. at 686.  Whether a detention was too long to be justified as an investigative stop turns not so much on the length of the detention as it does on whether the police diligently pursued means of investigation likely to confirm or dispel their suspicions quickly under the circumstances.  Id.; Soto-Cervantes, 138 F.3d at 1323-24.  See United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996) (seventy-five-minute stop reasonable); United States v. Vega, 72 F.3d 507, 515-16 (7th Cir. 1995) (sixty-two-minute stop reasonable); United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (one hour stop reasonable); United States v. Rutherford, 824 F.2d 831, 834-35 (10th Cir. 1987) (one hour stop reasonable).

Devore requested computer checks on defendant and on the car promptly after the car was stopped, again immediately after his first conversation with defendant, and again within five minutes of the initial stop, and the computer

checks were completed eight minutes later.  Devore took no further steps to confirm or dispel suspicion that the car was stolen after the dispatcher reported defendant's license was valid and that he had no outstanding warrants.  Devore told the dispatcher he wanted to check with Enterprise Rental in the Los Angeles area, but he would have to get more information first.  Devore did not provide this additional information or take any further action before the arrest to determine whether defendant was authorized to drive the car.  The officers did not diligently investigate their suspicion of car theft.

However, we conclude the troopers acted diligently in investigating their suspicions that defendant was transporting drugs.  Devore requested the EPIC check only three minutes after the initial computer checks had been completed.  The EPIC check disclosed the car had crossed the United States-Mexican border several times in the last three months.  During those three minutes, the troopers were not idle but continued to check on the condition of defendant's father.  The dispatcher reported the results of the EPIC check eleven minutes after Devore requested it, only a minute and a half before the ambulance arrived.  Thus, the investigation continued until just before the ambulance arrived, at which time the troopers concentrated on getting defendant's father to the hospital.  The troopers were not required to let defendant leave and drive his father to the hospital because they had reasonable articulable suspicion the car contained drugs and

they were diligently pursuing their investigation of that suspicion. Cf. Eubanks v. Lawson, 122 F.3d 639 (8th Cir. 1997). The troopers could have called for a dog team to check for the odor of drugs or could have asked for consent to search the car. However, we cannot say their failure to do so before completion of the EPIC check was unreasonable.

In assessing whether police diligently pursue means of investigation likely to confirm or dispel their suspicions quickly, we "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Sharpe, 470 U.S. at 686. This was not a typical traffic stop. Defendant's father's heart condition and the call for an ambulance made this a "swiftly developing situation." Because defendant's father's condition visibly worsened whenever the officers approached the car, we cannot fault the officers for waiting until he was safely at the hospital before asking defendant for consent to search the car. To do so would be to engage in unrealistic second-guessing of police actions in a "swiftly developing situation." If the officers had called for a dog team to come to the location of the stop, it was likely everyone would have left for the hospital before the dog team arrived.

Once defendant's father was safely at the hospital, the troopers acted promptly and requested consent to search the car. Because defendant consented,

whether the troopers' failure to call for a dog team to meet them at the hospital unnecessarily prolonged the detention does not arise as an issue. Cf. United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1061 (9th Cir. 1994). The record shows the troopers diligently investigated under the circumstances and that the detention was not unnecessarily prolonged. See generally Soto-Cervantes, 138 F.3d at 1323.

In his reply brief, defendant challenges the validity of his consent to the search of the car at the hospital. He argues he was still detained and the troopers did not tell him he was free to refuse consent. Valid consent may be given by a person being detained, and failure to advise a detainee of his right to refuse consent does not require a conclusion that the consent was involuntary. Doyle, 129 F.3d at 1377. There was no evidence of any duress or coercion by the troopers. See United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996). Although defendant may have been under stress because of his father's illness, that stress was not caused by the troopers.

Consent induced by trickery or deception may be involuntary. See id. Devore returned defendant's license and told him he was free to go when Devore had no intention of letting defendant leave if he refused a search of the car. However, this kind of deception cannot render consent involuntary because it makes the circumstances appear less coercive to the suspect, not more coercive.

Any person detained by police will feel some degree of compulsion to acquiesce in an officer's request.   United States v. Sanchez-Valderuten   , 11 F.3d 985, 990 (10th Cir. 1993).  Telling a suspect he is free to leave is not calculated to coerce consent.  A person falsely told he is free to leave will feel less compulsion to consent than one who knows he is being detained.  By contrast, it may be coercive for officers to induce consent by telling detainees they will get a search warrant if consent is not given.   See 3 Walter R. LaFave, Search and Seizure § 8.2(c) (1996).

     AFFIRMED.

                     Entered for the Court

                     Mary Beck Briscoe
                     Circuit Judge