**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSE MELQUIADES ORONA-SOTO,

    Defendant - Appellant.

No. 99-2036

D. New Mexico

(D.C. No. CR-98-480-BB)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **PORFILIO**, and **EBEL**, Circuit Judges.

Jose Melquiades Orona-Soto appeals the district court's partial denial of a motion to suppress, following which Mr. Orona-Soto entered a conditional plea of guilty to illegally re-entering the United States after having been previously deported, in violation of 8 U.S.C. §§ 1326(a)(1), (a)(2) and (b)(1). We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

On June 19, 1998, at approximately 6:00 a.m. United States Border Patrol Agent Robert Lee Old Mouse and his partner were in a marked Border Patrol vehicle monitoring traffic from the median of the interchange between Interstate 10 and Interstate 25 in Las Cruces, New Mexico. The interchange is some fifty miles from the Mexico-United States border. Agent Old Mouse observed a van driven by Mr. Orona-Soto heading west on Interstate 10. He testified that the van was "riding heavy," was "sluggish" and that "it slowed down considerably" when it passed Agent Old Mouse's vehicle. Tr. of Mot. to Suppress at 5. He observed three adults and a baby in the van. Id. at 6. Agent Old Mouse began to follow the van. He observed that it had a "paper license plate." Id. at 9.[1]

The agent further testified that he did not recall the driver ever looking at him, although he was "directly behind the vehicle" in his marked Border Patrol car, and he testified that the passenger "was fidgety, and he never turned around to look at us, even though we were right behind him, but he was fidgeting left to right, looking." Id. at 10. Agent Old Mouse followed the van as it exited the interstate and drove several miles through Las Cruces and then went back onto the

---

[1]Agent Old Mouse testified that "we do see it a lot where vehicles that are vans, or older vehicles, not very expensive, are purchased for the sole purpose of transporting aliens, and to see a van with a paper tag, driving the way it was, was something that I had seen many times." Tr. of Mot. to Suppress at 9.

interstate, heading north on Interstate 25. The van re-entered the interstate only a mile from where Agent Old Mouse had first seen the van. The agent testified that he followed the van for a total distance of ten miles.

Agent Old Mouse then stopped the van and discovered that "numerous people" were lying in the back of the vehicle. Id. at 12. When asked, Mr. Orona-Soto gave Agent Old Mouse his correct name. Agent Old Mouse asked Mr. Orona-Soto where he was born and whether he had immigration papers. Mr. Orona-Soto stated he did not have immigration papers. The agent then arrested Mr. Orona-Soto for being illegally in the United States and transported him and the other van occupants to the border patrol station.

At the border patrol station, a check of Mr. Orona-Soto's immigration status revealed that he had several prior deportations. Agents then advised Mr. Orona-Soto of his rights, and he confessed to the immigration violations contained in the records the border patrol had accessed by means of Mr. Orona-Soto's name.

Mr. Orona-Soto filed a motion to suppress evidence and statements he made on the ground that Agent Old Mouse lacked reasonable suspicion to stop the van.[2] The government responded that the investigatory stop was justified and

_____

[2]Mr. Orona-Soto's motion to suppress sought the suppression of "[a]ny physical evidence seized from Mr. Orona[;] [a]ny statements allegedly made by

(continued...)

that, in any event, Mr. Orona-Soto's identity could not be suppressed even if the initial stop violated the Fourth Amendment.

After conducting a hearing on the motion to suppress, the district court held that the initial stop of the van violated the Fourth Amendment, stating "I don't find that the officers had reasonable suspicion to make this stop. . . . I don't find any of the other factors and factual basis that the agents relied upon to lend themselves to constitute the existence of a reasonable suspicion in this case." Tr. of Mot. to Suppress at 64-65. The district court agreed with the government, however, that Mr. Orona-Soto's identity was not subject to suppression, even though the initial stop violated the Fourth Amendment. Accordingly, the record of prior deportations, which ineluctably led to the charge that he was currently an illegal resident of the United States, was not suppressed. Mr. Orona-Soto conditionally pled guilty to the immigration violation, reserving his right to challenge the partial denial of his motion to suppress. This appeal followed.

---

[2](...continued)
Mr. Orona[;] and [a]ny evidence obtained directly or indirectly as a result of any unlawfully seized evidence." Mot. to Suppress Physical Evidence & Statements, R. Vol. I at Tab 12.

**DISCUSSION**

"We analyze traffic stops under the principles applicable to 'investigative detentions' set forth by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Doyle, 129 F.3d 1372, 1375 (10th Cir. 1997). Thus, "[a]n investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion." Ornelas v. United States, 517 U.S. 690, 693 (1996).

As applied to border patrol agents detaining vehicles at places "other than the actual border or its functional equivalent," Doyle, 129 F.3d at 1375, we have recognized the Supreme Court's non-exclusive list of factors relevant to the reasonable suspicion inquiry:

> In determining whether there is a reasonable suspicion to stop a car in the border area, officers may consider any number of factors, including: (1) characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

United States v. Lopez-Martinez, 25 F.3d 1481, 1483-84 (10th Cir. 1994) (quoting United States v. Monsisvais, 907 F.2d 987, 990 (10th Cir. 1990) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975))). No single factor, or even combination of factors, is determinative. Instead, our examination for reasonable suspicion evaluates the "totality of the circumstances" surrounding

-5-

the stop.  United States v. Sokolow, 490 U.S. 1, 8 (1989).  Moreover, "a police officer views the facts through the lens of his police experience and expertise."  Ornelas, 517 U.S. at 699.  Thus, "the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention."  Lopez-Martinez, 25 F.3d at 1484.

When reviewing a district court's order granting or denying a motion to suppress, "we accept the trial court's findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the district court's determination."  Doyle, 129 F.3d at 1375.  However, as the Supreme Court has made clear, the ultimate determination of reasonableness under the Fourth Amendment is a question of law, and, therefore, "determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."  Ornelas, 517 U.S. at 699.  Furthermore, we may affirm the district court on any basis; indeed, "we may affirm the district court on a wholly different basis so long as our decision finds support in the record."  United States v. Winningham, 140 F.3d 1328, 1332 (10th Cir. 1998).

We affirm the district court's partial denial of Mr. Orona-Soto's motion to suppress, but on different grounds.  We conclude that the district court erred as a matter of law in concluding that, under the totality of the circumstances in this

case, Agent Old Mouse lacked reasonable suspicion to stop Mr. Orona-Soto's van. The specific articulable facts—a van 50 miles from the Mexican border, riding heavily and sluggishly, with a paper license plate, which immediately slows down upon passing a marked Border Patrol car, which exits the interstate and winds through the streets of Las Cruces before re-entering the interstate very near its original exit point, and has a "fidgety" passenger—when viewed through the lens of an experienced officer like Agent Old Mouse, gave rise to a reasonable suspicion to stop the van.  See, e.g., United States v. Barron-Cabrera, 119 F.3d 1454, 1462 (10th Cir. 1997) (noting that among totality of circumstances supporting stop was that driver became agitated and reduced speed upon seeing Border Patrol vehicle); United States v. Pollack, 895 F.2d 686, 690 (10th Cir. 1990) (noting among totality of circumstances supporting stop was that driver was "driving a large vehicle capable of hauling a large number of people").  Because the initial stop was permissible, suppression of Mr. Orona-Soto's identity was unnecessary.  We therefore need not address whether a defendant's identity can or should be suppressed following an illegal stop.[3]

---

[3]The government does not appeal the district court's grant of the motion to suppress with respect to evidence other than Mr. Orona-Soto's identity.  Because we affirm the district court's partial denial of the motion to suppress, in which the court refused to suppress Mr. Orona-Soto's identity, but on different grounds than those relied upon by the district court, we do not address the suppression of evidence other than Mr. Orona-Soto's identity.

For the foregoing reasons, the decision of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge