**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JESUS ERNESTO VARGAS, a/k/a
Jesus Ernesto Vargas-Galindo,

Defendant - Appellant

No. 02-5092
D.C. No. 02-CR-6-P
(N.D. Oklahoma)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Circuit Judge, **ANDERSON** and **O'BRIEN** , Circuit
Judges.

I. Background

On December 27, 2001, at approximately 9:00 A.M., Defendant-appellant

Jesus Vargas was driving his vehicle on Highway I-44 near Stroud, Oklahoma.

Vargas was driving with a female passenger, Irene Gomez. Transparent plastic

covered the rear license plate of Vargas' vehicle and a plastic tag holder obscured

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the state name. Oklahoma Highway Patrol Trooper Colby Cason stopped Vargas for an improper tag display, in violation of Okla. Stat. Ann. tit. 47, § 1113(A)(2).[1] Trooper Cason informed Vargas that he would issue a warning citation.

Trooper Cason requested that Vargas accompany him to his squad car, and he directed Vargas to sit in the front passenger side of the squad car while he ran a check on Vargas' driver's license and license plate number. The computer check uncovered no outstanding warrants or other problems associated with Vargas or his vehicle.

While filling out the warning citation form, Trooper Cason asked Vargas several questions. He inquired about Vargas' destination, and Vargas responded that he was on his way to St. Louis to visit his brother. Trooper Cason then asked where Vargas' brother lived in St. Louis. Vargas said that he did not know the part of town, but he knew how to get there. While in the front seat of the squad care, Vargas appeared "extremely nervous" and the artery in his neck was beating rapidly. Trooper Cason also noticed that Vargas' female passenger, still in

---

[1] Section 1113(A)(2) provides:

The license plate shall be securely attached to the rear of the vehicle, except truck-tractor plates which shall be attached to the front of the vehicle. . . . The license plate, decal and all letters and numbers shall be clearly visible at all times. The operation of a vehicle upon which the license plate is covered, overlaid or otherwise screened with any material, whether such material be clear, translucent, tinted or opaque, shall be a violation of this paragraph.

Vargas' vehicle, continually turned around and watched from the visor mirror of the car. When Trooper Cason inquired about Vargas' female passenger, Vargas told him that she was his mother.

Because Vargas had not brought his vehicle registration with him to the squad car, Trooper Cason went to retrieve it from Vargas' vehicle. At this time, Trooper Cason noticed that Gomez, the female passenger in Vargas' vehicle, also appeared extremely nervous. Trooper Cason observed that Gomez appeared too young to be Vargas' mother. When Trooper Cason asked Gomez where she and Vargas were traveling, she responded that they were going to visit an "amigo." While Trooper Cason was talking with Gomez, Vargas had opened the passenger door of the squad car and stuck his head out, as if to listen to the conversation. As Trooper Cason returned to the squad car, he noticed that the back seat of Vargas' vehicle appeared "unusual."

Trooper Cason then returned to his squad car. He asked Vargas why Gomez appeared so nervous. Vargas then told Trooper Cason that Gomez was an illegal alien. At this point, after Vargas signed the warning citation, Trooper Cason gave Vargas a copy of the warning citation along with his driver's license.[2] After returning Vargas' driver's license, Cason asked Vargas for permission to

---

[2] Although Vargas testified that Trooper Cason had not returned his driver's license at the time he requested permission to search the vehicle, the district court accepted Trooper Cason's testimony on this fact.

search his vehicle. Vargas responded, "Go ahead." At the suppression hearing, Cason testified that when he asked Vargas for consent to search his car, Vargas was not free to leave.

During the initial part of the search, Trooper Cason (1) examined the wheels of the car, (2) examined the car doors and "popped" the door panels to look behind them, and (3) searched a bag found in the back seat. Cason then opened the trunk and smelled Bondo [3] and he noticed that visible modifications had been made to the trunk. At this point, Trooper Cason called for assistance. One hour into the search, the assisting officer arrived with a drug-detection dog. The dog alerted to the presence of drugs. Using an "optoscope" (a remote-vision device), the officers examined a hidden compartment in the backseat/trunk area of the vehicle. They found two kilograms of cocaine in the compartment. At this point, the officers read Vargas his *Miranda* rights.

On January 9, 2002, a grand jury returned an indictment charging Vargas with one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). On January 31, 2002, Vargas filed a motion to suppress the evidence seized by the Oklahoma Highway Patrol. After a hearing, the district court denied Vargas' motion, concluding that (1) Trooper

---

[3] Trooper Cason testified that Bondo is a bond dough used to repair dents in vehicles. Cason testified that it is also routinely used to create false compartments within a vehicle.

Cason had objectively reasonable, articulable suspicion of criminal activity at the time he requested permission to search Vargas' vehicle, and (2) Vargas validly consented to the search. Vargas entered a conditional plea of guilty on March 28, 2002, reserving his right to appeal the ruling of the district court denying his motion to suppress.

Vargas challenges the district court's denial of his motion to suppress on numerous grounds, including: (1) Trooper Cason's detention exceeded the legitimate scope of the stop; (2) Trooper Cason did not have probable cause for the further detention and the search; and (3) Vargas did not voluntarily consent to the search of his vehicle. We consider each contention in turn. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## II. Discussion

### A. Standard of Review

We review the district court's denial of a motion to suppress under a clearly erroneous standard. *United States v. Soto*, 988 F.2d 1548, 1551 (10th Cir. 1993) (citations omitted). In conducting our review, we consider the evidence in the light most favorable to the district court's ruling. *Id*. (citations omitted). The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law, which we review de novo. *Id.* (citations omitted).

B.     Overview of Applicable Law

In reviewing the constitutionality of traffic stops under the Fourth Amendment, we conduct a two-step inquiry.  First,     we must determine "whether the officer's action was justified at its inception." *United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994).  Second, we must consider "whether the action was reasonably related in scope to the circumstances that first justified the interference." *Id.*  Further detention or questioning, unrelated to the traffic stop, is only permissible (1) where the officer has "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring," or (2) " if the initial detention has become a consensual encounter." *Id.* (citations omitted).

C.     Whether Trooper Cason's Detention of Vargas was Reasonable at Its Inception.

"[A] detaining officer must have     an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping [an] automobile." *Soto*, 988 F.2d at 1554 (citation omitted).  In this case, Trooper Cason observed that the license plate of Vargas' vehicle was covered by a tag mount, and that a plastic covering obscured the entire tag.  This observation gave Trooper Cason reasonable suspicion that Vargas' vehicle was in violation of Okla. Stat. Ann. tit. 47, § 1113(A)(2).  Accordingly, Trooper Cason's initial stop of Vargas was reasonable under the Fourth Amendment.     *See Soto*, 988 F.2d at 1554.

-6-

D. Whether Trooper Cason's Actions Were Reasonably Related in Scope to the Circumstances That Initially Justified the Detention.

"During a routine traffic stop, the detaining officer may request a driver's license and vehicle registration, run a computer check on the car and driver, and issue a citation." *Soto*, 988 F.2d at 1554 (citations omitted). In addition, the detaining officer may question the vehicle's occupants regarding their identity, travel plans, and ownership of the vehicle. *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir. 1989).

In this case, Trooper Cason detained Vargas while he conducted a check on Vargas' driver's license and license plate number and issued a warning citation. Although Trooper Cason asked Vargas several questions while he filled out the citation form, the questions related to Vargas' ownership of the vehicle, the identity of Vargas' female passenger, and his travel plans. Thus, under *Soto* and *Rivera*, Trooper Cason's actions were within the legitimate scope of the traffic stop.

The fact that Trooper Cason ordered Vargas out of the car and directed him to sit in the front seat of the squad car does not alter this conclusion. "[T]he intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances. Reasonableness is determined by balancing the governmental interest in crime prevention against the citizen's right to be free

from governmental intrusion." *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) (citations omitted). We find that Trooper Cason's decision to direct Vargas to sit in the front seat of the squad car was reasonable for several reasons. First, in relocating Vargas, Trooper Cason justifiably protected himself from any weapons concealed in the vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (removal of passenger from vehicle for security and safety reasons is legitimate during *Terry* stop); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (a concern for officer safety justifies ordering a driver out of his or her vehicle). Second, Trooper Cason's decision to ask Vargas to accompany him to his squad car while he ran the computer checks likely increased the overall safety of the situation. Standing on the shoulder of the highway places both the officer and the person detained in some degree of danger of injury due to a traffic accident. Relocating to the officer's squad car reduces the potential for injury. Third, separating Vargas and Gomez served the investigatory purpose of removing any opportunity for the two to concoct a consistent explanation regarding the purpose of their travel. Fourth, placing Vargas in the front seat of the squad car – for this limited duration – likely lead to a less intrusive encounter. The Supreme Court in *Mimms* acknowledged that ordering a driver out of the car results in additional public exposure, although the Court characterized the additional intrusion as *de minimis*. *Id.* By allowing Vargas to wait in the front seat of the squad car,

Trooper Cason removed this *de minimis* additional intrusion while still furthering the purpose of officer safety as articulated in *Mimms*. Finally, because Trooper Cason questioned Vargas while running the computer check and filling out the warning citation form, he likely shortened the overall duration of the encounter.[4]

E.   Whether Trooper Cason's Request to Search Vargas' Vehicle, Unrelated to the Initial Traffic Stop, Was Reasonable.

Once an officer has issued a citation in a traffic stop, "'[i]f the driver produces a valid license and proof of right to operate the vehicle, the officer must allow him to continue on his way without delay for further questioning.'" *Soto*, 988 F.2d at 1554 (citing *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990)). However, further detention or questioning – unrelated to the traffic stop – is permissible in two instances: (1) if the officer has "objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring;" or (2) "if the initial detention has become a consensual encounter." *Gonzalez-Lerma*, 14 F.3d at 1483 (citations omitted).

---

[4] We do not suggest that detention in a police car is per se reasonable under *Terry*. *Cf. United States v. Speal*, No. 97-3344, 1998 WL 886757, at *3 (10th Cir. Dec. 21, 1998) ("We do not suggest that detention in a police car never exceeds the reasonable parameters of a *Terry* stop.").

1.      *Whether Vargas Voluntarily Consented to the Search of His Vehicle* .

"Whether or not a party has voluntarily consented to a search is a question of fact that the district court must evaluate in view of the totality of the circumstances." *United States v. Doyle* , 129 F.3d 1372, 1377 (10th Cir. 1997) (citations omitted).  In the present case, the district court found that Vargas' consent was voluntarily given, and "we must accept that finding unless it is clearly erroneous."  *Soto* , 988 F.2d at 1554.  The fact that a party is being detained at the time consent is given does not necessarily render the consent involuntary.  *Doyle,* 129 F.3d at 1377 (citations omitted).  In the context of a routine traffic stop, we have previously held that once an officer has returned a driver's documentation, any subsequent encounter is "consensual" so long as "'a reasonable person under the circumstances would believe he was free to leave or disregard the officer's request for information.'"  *United States v. Elliot* , 107 F.3d 810, 814 (10th Cir. 1997) (citing *United States v. McKneely* , 6 F.3d 1447, 1451 (10th Cir. 1993)).  In determining whether a reasonable person would have felt free to leave or disregard the officer's questioning, we consider the totality of the circumstances.  *Doyle* , 129 F.3d at 1377.

In this case, Trooper Cason returned Vargas' documentation prior to his request for permission to search Vargas' vehicle.  On the other hand, Vargas was

still in the front seat of Trooper Cason's squad car. Further, Cason testified that Vargas was not free to leave at the time of his request.

We need not decide whether Vargas was in custody at the time of Cason's request, because custody does not necessarily render consent involuntary. *Id.* (citation omitted). Rather, we must consider the totality of the circumstances. Here, Vargas points to no evidence of overt coercion. *See Soto*, 988 F.2d at 1558. Trooper Cason did not unholster his weapon, use an authoritative tone, or physically harass Vargas. Further, Cason was the only officer present at the time of Vargas' consent. Vargas consented while seated in the front seat of Cason's squad car, parked on the shoulder of a public highway in broad daylight. Further, unlike *Soto*, Trooper Cason had already returned Vargas' documentation. Based on these facts, we hold that the district court's conclusion that Vargas voluntarily consented to the search of his vehicle was not clearly erroneous. *See id.*

Of course "illegal" detention, or detention in the absence of reasonable suspicion, might present a different case. But here, even if Vargas was not free to leave at the time of Trooper Cason's request, any additional detention beyond the scope of the initial traffic stop was justified based on Trooper Cason's objectively reasonable, articulable suspicion of illegal activity.

Trooper Cason possessed reasonable, articulable suspicion of criminal activity based on numerous observations made during the routine traffic stop.

First, Trooper Cason testified that both Vargas and Gomez appeared extremely nervous during the encounter. *See Soto*, 988 F.2d at 1556; *United States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991). Second, Vargas told Trooper Cason that Gomez was his mother, a statement that was inconsistent with Cason's observation of Gomez's apparent age. *Cf. Turner*, 928 F.2d at 959 ("Defendant claimed that he was an auto mechanic, but the officer observed that his hands were well-manicured and did not appear to be in the condition of someone who works as an auto mechanic."). Third, Vargas and Gomez offered conflicting accounts as to the purpose of their travel, and Vargas could not specify where in St. Louis his brother lived. *See United States v. Rivera*, 867 F.2d 1261, 1264 (10th Cir. 1989) (finding reasonable suspicion based in part on defendant's conflicting and inconsistent responses to officer's questions); *see also United States v. Kopp*, 45 F.3d 1450, 1454 (10th Cir. 1995) (finding reasonable suspicion based in part on findings that (1) the defendant's explanations of his travel plans and purpose were not plausible, (2) the defendant could not provide an address for his destination, and (3) the defendant's explanation regarding travel plans was inconsistent with the explanation his passenger gave). Fourth, Trooper Cason observed that the back seat of Vargas' vehicle appeared "unusual." In light of these facts, we cannot say that the district court was clearly erroneous in concluding that Trooper Cason had reasonable, articulable suspicion of criminal

activity.

   2.   *Whether the Scope of Trooper Cason's Search was*

   *Reasonable* .

Ordinarily, an individual's consent to an officer's request to search her vehicle authorizes a thorough and complete search of the vehicle, absent either (1) a request by the officer with a limitation in scope, or (2) a limiting instruction included in the individual's consent.   *See Elliot* , 107 F.3d at 815 (citing cases). In this case, Trooper Cason did not limit his request for consent.  Nor did Vargas' response ("Go ahead") in any way limit his consent.  Thus, Vargas consented to a thorough search of his vehicle, and the Oklahoma Highway Patrol's search pursuant to Vargas' consent comported with the requirements of the Fourth Amendment. [5]

---

[5] Vargas also argues that under Oklahoma law, a consent to search given during custodial interrogation must be preceded by a proper *Miranda* warning. We need not decide whether or not this is true, because it is the requirements of the Constitution, rather than Oklahoma state law, with which we are concerned.

## III. Conclusion

For the above reasons, we AFFIRM the district court's denial of Vargas' motion to suppress and AFFIRM Vargas' conviction for possession of cocaine with intent to distribute.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge