**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 23, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROSS NIVEN LEGGE,

      Defendant-Appellant.

No. 10-4091

(D.C. No. 1:09-CR-00018-DB-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **BALDOCK,** and **TYMKOVICH**, Circuit Judges.[**]

Defendant Ross Niven Legge entered a conditional guilty plea to one count of

possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1),

reserving the right to appeal the district court's denial of his motion to suppress. On

appeal, he argues the district court should have granted his motion to suppress all

evidence obtained from a traffic stop because the traffic stop was not justified at its

inception, the trooper's actions improperly exceeded the scope of the detention, and,

---

[*] This order and judgment is not binding precedent except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however,
for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,
therefore, submitted without oral argument.

as a consequence, the evidence obtained from the search of the vehicle should be suppressed as fruit of the poisonous tree. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

In February 2009, Utah State Trooper Jason Jensen stopped a black Honda for speeding and parked behind it in the right-hand emergency lane on the northbound side of Interstate 15. He left his vehicle's emergency lights flashing. After issuing the ticket and letting the Honda driver leave, Jensen returned to his vehicle to complete paperwork related to the issuance of the ticket. While inside his vehicle, with the emergency lights still flashing, Jensen observed a black truck driving past in the right lane adjacent to the emergency lane where his patrol car was parked. Utah law includes a "slow down/move over provision" which states:

> The operator of a vehicle, upon approaching a stationary authorized emergency vehicle that is displaying alternately flashing red, red and white, or red and blue lights, shall . . . if traveling in a lane adjacent to the stationary authorized emergency vehicle and if practical, with due regard to safety and traffic conditions, make a lane change into a lane not adjacent to the authorized emergency vehicle.

Utah Code § 41-6A-904(2)(c). Though weather conditions were clear, no obstructions or defects were present in the left lane, and enough space existed between the two other cars in the left lane for the driver to merge into that lane, he failed to do so. Jensen therefore stopped the driver of the truck for a violation of the slow down/move over law.

2

As Jensen approached the truck on the passenger side, he noticed braided sage on the dashboard and little tree air fresheners throughout the cab. As one of the occupants opened a window, the smell of air freshener and laundry detergent overwhelmed Jensen. Defendant, the driver, identified himself as Ross Niven Legge, and the passenger identified himself as Leonard J. Ferris. Jensen asked where they were driving from, and Defendant and Ferris answered they had come from Las Vegas. Defendant asked whether he had been stopped for speeding, and Jensen explained his violation of Utah's slow down/move over law. Jensen obtained Defendant's driver's license, which listed an address in Alberta, Canada. As Defendant handed over his license, Jensen noticed his hand trembling excessively and inferred that he was abnormally nervous. Jensen also obtained Ferris's license, which listed an address in Faribalt, Minnesota. Ferris indicated that he owned the truck and produced proof of insurance and the title but could not immediately find the registration. Jensen told Ferris to remain in the car and search for it and asked Defendant to accompany him to his patrol car.

While waiting in the patrol car for Ferris to locate the truck's registration, Jensen asked Defendant about his travel plans and how he knew Ferris. Defendant answered the questions, though he gave conflicting explanations of how he and Ferris met. Jensen then returned to the truck, where Ferris had located the registration. Jensen asked Ferris about his travel plans and how he knew Defendant. Ferris's answers were not entirely consistent with Defendant's. Jensen then returned

3

to his patrol car with the registration. He returned all the documents to Defendant and informed him he was only giving him a warning. From Jensen's initial stop of the truck until he returned the documents to Defendant, about fifteen minutes elapsed. Defendant contends Jensen's actions during this time period impermissibly extended the scope of the detention.

Defendant opened the door to the patrol car and began to exit the car. Jensen, who had served as a Utah State Trooper for seven years and was trained to perform drug interdictions, suspected that Defendant and Ferris were somehow involved in drug trafficking, based on the braided sage, air fresheners, and laundry detergent smell and on Defendant and Ferris's conflicting answers to his questions. Thus, Jensen inquired whether he could ask some additional questions. Defendant agreed to further questioning without objection. Jensen asked whether the truck contained any contraband, listing various drugs. Defendant answered "No" to all Jensen's questions but dropped eye contact when Jensen asked about marijuana and cocaine. Jensen then asked whether he could search the truck. Defendant responded that he did not mind but could not consent because he did not own the truck.

Jensen left the patrol car, returned to the truck, and asked Ferris whether he could search the truck. Ferris answered in the affirmative, then responded, "You can search, that's fine," when Jensen asked again to confirm his permission. When searching the truck, Jensen discovered an unlocked bag containing a box of 23 kilo-sized packages of cocaine coated in laundry detergent. He then arrested Defendant

4

and Ferris and took them and their truck to the Box Elder County Jail. After obtaining a search warrant for the truck and other bags, Jensen discovered 60 additional kilograms of cocaine.

Accordingly, Defendant was charged with possessing cocaine with intent to distribute. He moved to suppress all evidence obtained from the traffic stop, arguing the stop was void from its inception, Jensen's separate questioning of Defendant and Ferris exceeded the scope of the detention, and there was no lawful consent to search the truck.[1] The district court denied Defendant's motion. Defendant then entered a conditional guilty plea reserving his right to appeal the district court's order.

## II.

When reviewing a district court's denial of a motion to suppress, we review the court's factual findings for clear error. United States v. Simpson, 609 F.3d 1140, 1146 (10th Cir. 2010). We consider the evidence in the light most favorable to the district court's ruling; here, in the light most favorable to the Government. United States v. Cortez-Galaviz, 495 F.3d 1203, 1205 (10th Cir. 2007). The district court's legal conclusions, including its finding of reasonableness under the Fourth Amendment, however, we review de novo. Simpson, 609 F.3d at 1146.

## III.

---

[1] Defendant abandoned this lack of consent argument on appeal, instead arguing the evidence Jensen obtained from the search should be excluded as fruit of the poisonous tree because the stop was void at its inception and Jensen improperly exceeded the scope of the detention by separately questioning Defendant and Ferris.

5

The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons . . . and effects, from unreasonable searches and seizures, shall not be violated." U.S. Const. Am. IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment." United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995). Our first inquiry in determining the reasonableness of such a detention is "whether the officer's action was justified at its inception." Terry v. Ohio, 392 U.S. § 1, 20 (1968). "A detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping an automobile." United States v. Cervine, 347 F.3d 865, 869 (10th Cir. 2003) (quoting United States v. Soto, 988 F.2d 1548, 1554 (10th Cir. 1993)) (alterations and quotations omitted).

Defendant argues Jensen was not justified in stopping him for a violation of Utah's slow down/move over law. He argues it was not practical or safe for him to change lanes. Indeed, he argues that had he changed lanes, he would have risked violating two other Utah statutes: Utah Code § 41-6A-804 and § 41-6A-711. Section 41-6A-804 provides that a person may not change lanes until he can do so with reasonable safety and after giving a reasonable signal. A reasonable signal is one "given continuously for at least the last two seconds preceding the beginning of the movement." Utah Code Ann. § 41-6A-804(1)(b). Section 41-6A-711 provides that a vehicle's operator must follow other cars "at a distance so that at least two seconds elapse before reaching the location of the vehicle directly in front of the operator's

6

vehicle." Id. § 41-6A-711(b). Citing Jensen's testimony, Defendant argues that because the car in the left lane was less than five seconds behind him, he would have been unable to signal for two seconds, change lanes, and follow the "two second rule" with respect to the other vehicle. Thus, he argues, Jensen's stop of his truck was unjustified because he was not, in fact, in violation of Utah's slow down/move over law. The district court's conclusion that Jensen had reasonable suspicion is a factual one which we will not reverse unless it is clearly erroneous. Simpson, 609 F.3d at 1146; United States v. White, 584 F.3d 935, 946 (10th Cir. 2009); United States v. Burkley, 513 F.3d 1183, 1186–87 (10th Cir. 2008).

The district court found: "Sufficient space existed between the two cars such that [Defendant] could have safely changed lanes as required by the statute. The road conditions would not have prevented a safe lane change." Appellant's App. at 76–77. As a result, the court concluded Jensen's stop of Defendant for a violation of Utah's slow down/move over law was justified at its inception. Id. at 77. As the Government points out, the only evidence the district court had before it, and consequently, the only evidence we consider, was Jensen's testimony about Defendant's driving and the traffic stop.[2] Jensen testified that Defendant failed to

[2] At the hearing on Defendant's motion to suppress, the parties mention a video of the traffic stop. Neither party included it in the record on appeal, and neither party refers to it in their briefs. Nor does the district court appear to have relied on the video in denying Defendant's motion to suppress. Thus, we do not consider what impact the video may have had on the district court's conclusions.

move his truck from the right lane into the left lane, though "traffic conditions at that time were moderate" and the car in the left lane "was far enough back that it was practical for the black pickup truck to move to the left lane." Id. at 110. Jensen also testified no other conditions would have prevented a safe lane change: the weather was partly cloudy, the road was dry, and there were "no road hazards and no potholes or anything that would have prevented him from moving." Id. at 111.

Even if only five seconds elapsed between the time when Defendant's truck passed Jensen and the time when the next car came by, Jensen also testified enough space existed for Defendant to merge safely and avoid being in the lane adjacent to the patrol car. The district court could reasonably credit Jensen's testimony that all road conditions, including other vehicles, enabled Defendant to comply safely and legally with Utah's slow down/move over law. We see no reason to conclude the district court clearly erred in finding that Jensen had reasonable suspicion that Defendant violated Utah's slow down/move over law. Thus, the stop was justified at its inception.

IV.

Next we turn to Defendant's argument that Jensen's actions during the stop exceeded the scope of the stop. This part of our Fourth Amendment analysis requires us to determine whether, considering the totality of the circumstances, Jensen's action "was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. We determine the

reasonableness of a seizure by balancing the need to seize an individual against the invasion the seizure entails. Id. at 21. Generally, an officer may lawfully detain an individual only for the amount of time necessary to accomplish the purpose of the stop. Cervine, 347 F.3d at 870–71. "Under [the] ordinary circumstances [of a traffic stop], this limits the officer to a request for the driver's license and registration, a computer check on the car and driver, an inquiry about the driver's travel plans, and the issuance of a citation." Id. at 871. An officer may only extend this encounter for reasons other than the stop's initial purpose: "(1) if the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) if the initial detention has become a consensual encounter." Id.

Defendant argues "Jensen violated the scope of detention by requiring [Defendant] to come to his police car and Ferris to wait in his truck while he interrogated them both in an effort to develop reasonable articulable suspicion of drug trafficking."[3] Appellant Br. at 18. On the contrary, the scope of Jensen's actions during the initial detention were reasonably related to the traffic stop. Jensen questioned Defendant and Ferris about their travel plans, obtained Defendant's

---

[3] Only once does Defendant argue Jensen "further extended the stop in violation of the Fourth Amendment when he gave [Defendant] a verbal warning but started questioning him again before he could completely exit the police car." Appellant Br. at 12. Though this statement appears in Defendant's opening brief in his summary of the argument, the argument section nowhere contains such an argument. We do not consider arguments that are inadequately briefed. Bronson v. Swenson, 500 F.3d 1099, 1104 (10th Cir. 2007).

9

license, waited for Ferris to locate the vehicle registration, and completed a warning citation. These are all permissible activities for a law enforcement officer to pursue during a traffic stop. Cervine, 347 F.3d at 871. Additionally, when Jensen asked Defendant to return with him to the patrol car, thus separating Defendant and Ferris, he did not violate Defendant's Fourth Amendment rights. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (holding that a law enforcement officer does not violate a driver's Fourth Amendment rights by requiring him to stand outside his car); see also United States v. Vargas, 57 Fed. App'x 394, 398–99 (10th Cir. 2003) (holding that a state trooper's conduct was within the legitimate scope of a traffic stop when he let the passenger remain in the car and ordered the driver to join him in his patrol car while questioning him and performing computer checks). Indeed, Jensen may have shortened the length of the initial detention by having Defendant join him in his patrol car because he could then run computer checks and ask questions about defendant's travel plans at the same time. In addition, Jensen reasonably separated Defendant and Ferris for investigative purposes, effectively preventing them from concocting a story together about their travel plans. No evidence suggests that Jensen unreasonably detained Defendant and Ferris longer than necessary. The entire initial detention took less than fifteen minutes. On these facts, we conclude Jensen's initial detention of Defendant and Ferris was reasonable and that his actions did not exceed the scope of the stop.

V.

Lastly, Defendant argues the evidence obtained during the search of the truck should be suppressed as fruit of the poisonous tree because the initial stop and detention violated his Fourth Amendment rights.[4] The fruit of the poisonous tree doctrine requires the suppression of evidence when police obtained that evidence through exploiting their own illegal actions. Wong Sun v. United States, 371 U.S. 471, 488 (1963). "To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights." United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000). He must then demonstrate a factual nexus between that violation and the evidence he challenges. Id. Only then must the Government show the evidence is not fruit of the poisonous tree. Id. Because neither the initial stop nor Jensen's actions during the stop violated Defendant's Fourth Amendment rights, Defendant has not met his burden to demonstrate that the evidence should be suppressed as fruit of the poisonous tree.

We conclude the district did not err in denying Defendant's motion to suppress the evidence obtained from the search of the truck. The district court's order,

---

[4] Though the Government briefed the issue, Defendant does not argue either that Ferris's consent was invalid or that Jensen did not have reasonable suspicion to search the truck. Thus, we do not consider these questions.

11

therefore, is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge